[No. 6260.   Decided December 27, 1906.]

PETER MORRISON, *Guardian of the Person and Estate of Sylvester Cohalan, Insane, Respondent,* v. T. H. STEENSTRA, *Defendant,* W. J. McCANNA *et al., Appellants.*[1]

APPEAL—OBJECTIONS—WAIVER—THEORY OF TRIAL—JUDGMENT—VA-
CATION—FORM OF ACTION. Where a petition to vacate a judgment
states a cause in equity for relief from a judgment fraudulently ob-
tained against an insane person, and it is so treated by the court
at the close of plaintiff's testimony, the defendants waive any objec-
tion to the proceeding as one in equity by introducing evidence upon
the issues without asking for leave to file an answer or claiming any
surprise.

JUDGMENTS — AGAINST INSANE PERSON — VACATION — GROUNDS —
FRAUD. Where, after the foreclosure of a mortgage against an in-
sane person, a judgment in a small amount is wrongfully secured
against the insane person, by persons knowing of his insanity, for
the purpose of redeeming from the foreclosure sale property worth
$3,000 or $4,000 on payment of but $553.17, the judgment is properly
vacated, with leave to the guardian of the insane person to redeem
upon restoration of the amounts paid out.

Appeal from a judgment of the superior court for Spo-
kane county, Kennan, J., entered January 9, 1906, upon
findings in favor of the plaintiff, after a trial on the merits
before the court without a jury, in an action to effect an
equitable redemption of real estate from execution sale. Af-
firmed.

*Nash & Nash,* for appellants.

*Fred C. Pugh* and *A. J. Laughon,* for respondent.

HADLEY, J.—This is a proceeding to effect a redemption
of real estate from execution sale, in behalf of an insane per-
son. The history of the case is as follows: In 1891 Sylvester
Cohalan executed and delivered to one Sorenson a promis-

[1]Reported in 88 Pac. 104.

sory note, and mortgage to secure it, for $1,000, with ten per cent per annum interest. The mortgagee afterwards assigned the mortgage to the Security Savings Society. The assignee brought suit to foreclose, and judgment was rendered in its favor by the superior court. A decree of foreclosure was entered and the mortgaged property was ordered sold to satisfy said judgment. An appeal was taken to this court, and on March 14, 1903, a decision was rendered on the appeal, whereby the trial court was directed to modify the judgment theretofore rendered by materially reducing the amount. *Security Sav. Soc. v. Cohalan,* 31 Wash. 266, 71 Pac. 1020. The superior court modified the judgment and decree of foreclosure to conform to the order of this court, and subsequently the property was sold under the order of sale to W. F. Magart, for the sum of $500. Cohalan, as the appellant in that appeal, recovered his costs on the appeal in the sum of $78.15, which included the cost of printing his brief. The sum was paid by the clerk of ·the superior court to John M. Gleason, the attorney for Cohalan. The brief was printed by T. H. Steenstra, at the solicitation of Mr. Gleason, while acting as the attorney for Cohalan. Steenstra never saw Cohalan about the matter, and the bill for printing the brief was charged to Gleason. When Gleason received the money from the clerk as aforesaid, he did not pay Steenstra for the printing, but applied the entire amount upon his account for attorney's fees, and did not at any time pay the printing bill. Gleason subsequently advised Steenstra to bring suit against Cohalan for the amount of the bill, and said to him if he would do so, that such care would be taken of the judgment as would bring Steenstra his money. In Steenstra's behalf an action was commenced before a justice of the peace to recover the amount of the printing bill. Neither Steenstra nor Cohalan was present at the trial, but judgment was taken by default. This judgment for the consideration of $41.25 was assigned

by Steenstra to Jerome Harrington, and transcript was then filed by Harrington in the office of the clerk of the superior court. Immediately after the filing of the transcript, Harrington gave notice that he would apply to redeem the aforesaid land from the foreclosure sale. Redemption was thus effected, and the sheriff executed a deed to Harrington on October 8, 1904. On January 9, 1905, Harrington conveyed the premises by quitclaim deed to his brother-in-law and sister, W. J. McCanna and Maggie McCanna, respectively. On the same day that the quitclaim deed was executed, Cohalan was adjudged insane, and a few days thereafter the plaintiff in this case was appointed guardian of his person and estate.

A few days after the appointment of the guardian, he brought this proceeding. He filed what he called a petition to vacate judgment. The petition is very long and circumstantial in its statements, reciting much of the history hereinbefore outlined. It was originally intended as a petition to vacate the judgment under Bal. Code, § 5153 (P. C. § 1033), and particularly under subdivisions 3, 4, 5, and 7, thereof. The petition alleged that Cohalan was at all times during the events hereinbefore narrated an insane person; that at the time summons was issued in the Steenstra suit and for a long time prior thereto, he was insane and wholly incapable of understanding what was meant by the service of process, and incompetent to realize the effect of the judgment, or to know that a judgment would be rendered against him; that he was likewise insane and wholly incompetent when the foreclosure suit was brought, when judgment therein was rendered, when the sale was made, and that he has at all times since continued to be insane; that his insanity was well known to all the participants above named; that the scheme for obtaining the said Steenstra judgment was a fraudulent conspiracy for the purpose of enabling redemption to be made

from the foreclosure judgment and of securing title to the property of the insane on payment of the meager sum of $553.17, when the property was in fact worth $4,000. Many other things are alleged in the petition, but the above is the gist of it. All interested persons were made parties to the petition, and all facts known to the guardian were alleged.

At the conclusion of the petitioner's testimony, the defendants moved for a nonsuit, on the ground that no cause for vacation of the judgment was shown within the statute. The court then construed the petition as a bill in equity and held that, inasmuch as the parties interested were all before the court, a prima facie cause for relief had been shown, and denied the nonsuit. The defendants' counsel, with this knowledge of the court's view of the pleading, did not ask leave to file an answer thereto, claimed no surprise by reason of the construction placed upon the pleading by the court, and at once proceeded to introduce record evidence in opposition to the allegations of the pleading and the evidence offered by the plaintiff. Judgment was entered to the effect that the Steenstra judgment shall be vacated; that the subsequent redemption of the premises from the foreclosure sale shall be set aside; that the deed from Harrington to McCanna shall be set aside, and that the guardian shall be permitted to redeem from the foreclosure sale upon the payment to Harrington of the full amount paid by him to effect the former attempted redemption, together with the amount paid by him for the Steenstra judgment, the total sum of all of which is stated in the decree to be $553.17. This privilege of redemption must, however, be exercised by the guardian within ninety days of the date of the judgment. The defendants have appealed from the judgment, with the exception of defendant Steenstra, who has not appealed.

It is assigned that the court erred in overruling the demurrer to respondent's pleading, and in denying the motion for nonsuit and dismissal at the close of respondent's testimony. We have seen that at the trial the court construed the peti-

tion as a bill in equity. This was after appellants' demurrer and motion had been submitted, on the theory that the proceeding was one under the statute to vacate a judgment. In the face of the court's announcement, appellants proceeded with the trial, and asked no leave to answer or to in any manner attack the proceeding as one in equity. They are therefore precluded from urging in this court any objection to the proceeding as one in equity. Viewed as a proceeding in equity, it is a direct attack upon a judgment alleged to have been obtained against an insane person when all the participants who were active in the scheme of obtaining the judgment knew of the insanity of the judgment debtor. As such, it states a cause for relief, and it is immaterial what effect should be given to it as a mere petition to vacate under the statute. The evidence, at the time of the motion for nonsuit, had strongly supported the allegations of the pleading. It was, therefore, neither error to overrule the demurrer nor to deny the motion for nonsuit.

The court found that, at all times during the events heretofore stated, said Cohalan was insane, and the finding is abundantly justified by the evidence. The findings also show that Jerome Harrington knew of the insanity, and that he instigated the procurement of the Steenstra judgment against the incompetent so that he might purchase the judgment; that the purchase thereof, the filing of the transcript in the office of the clerk of the superior court, and the redemption of the land by Jerome Harrington, all resulted from a design on the part of said Harrington to cheat and defraud said Cohalan and to obtain his farm, worth between $3,000 and $4,000, for the sum of $553.17; that the attempted conveyance of the real estate by Jerome Harrington to the McCannas was also in furtherance of said design, knowing that Cohalan was insane. These findings we think are all sustained by the evidence and should not be disturbed.

The conclusions of law and judgment properly follow. Under the circumstances shown by the court's findings, it

would be shocking to one's sense of equity not to grant relief. The judgment of the court does equity. It grants equal and exact justice. It requires a restoration to appellants of all from which they have parted, and preserves a valuable tract of land to an incompetent man, who was known to be such by appellants when they paid their money in the attempt to procure title to the land. The judgment is affirmed, and since by reason of the appeal the redemption right accorded to respondent by the decree could not be exercised within the time fixed in the decree, it is ordered that respondent shall be permitted to exercise the right of redemption pursuant to the decree within ninety days from the date the remittitur herein shall be filed with the clerk of the superior court.

MOUNT, C. J., ROOT, FULLERTON, DUNBAR, and CROW, JJ., concur.