[No. 25091. *En Banc.* November 2, 1934.]

LEE L. MELLEN, *Appellant,* v. T. J. EDWARDS *et al., Respondents.*[1]

[1]Reported in 37 P. (2d) 203.

*W. G. Beard, J. Speed Smith,* and *Henry Elliott, Jr.,* for appellant.

*Caldwell & Lycette, Wright, Jones & Bronson, Sherman F. Ebbinghouse,* and *William A. Gilmore,* for respondents.

TOLMAN, J.—This is an appeal from an order refusing confirmation of a sheriff's sale had under a decree of mortgage foreclosure.

It appears that, in March, 1926, respondents Edwards and Mullane, for a valuable consideration, executed and delivered to the appellant their promissory note for fifteen hundred dollars, with interest, and secured the payment of the note by executing and delivering the real estate mortgage which was foreclosed in this action. When the note matured according to its terms in March, 1929, three hundred dollars was paid on account of the principal, and the balance was extended for another three-year term. At some time after the mortgage was executed and recorded, the respondent Beatrice Dawson, a spinster, acquired title to the mortgaged property, and by her contract and the deed to her she assumed and agreed to pay the mortgage debt.

Nothing further was paid on the principal of the debt, and after it matured on March 3, 1932, this action was brought, resulting in a decree of foreclosure fixing the amount due at $1,563.58, plus $125 attorney's fees, costs, and subsequently accruing interest, and providing for a deficiency judgment against the respondents, with subrogation rights to Edwards and wife against all other respondents and to Mullane and wife against the respondent Dawson.

An order of sale was duly issued to the sheriff, who gave notice of sale in strict compliance with the stat-

ute; and thereafter, on the day fixed, the sheriff proceeded as shown by his return:

"I attended at the time and place fixed for said sale, and exposed the premises for sale in one parcel (deeming that the most advantageous), to the highest bidder, when LEE L. MELLEN being the highest and best bidder therefor, the said premises were struck off by me to the said LEE L. MELLEN for the sum of nine hundred fifty and no/100 ($950) dollars, which was the whole price bid therefor, and the highest price bid therefor; and that I issued to said purchaser a certificate of sale in accordance with the law, and delivered the same to the clerk of said court; . . ."

Respondents filed objections to the confirmation of the sale upon the following grounds: (1) Substantial irregularities in the proceedings; (2) that the price was grossly inadequate; (3) that the plaintiff did not act in good faith in bidding at the sale; and (4) that the plaintiff was both mortgagee and purchaser at the sheriff's sale. These objections were supported by affidavits, the substance of which will later appear.

Hearings were had, and finally on January 20, 1934, an order was entered, from which we quote:

"The court having heretofore duly heard and considered the motion and objections and having heard and considered the files and affidavits submitted and having heard the argument and statements of counsel and having orally found in favor of the defendants and against the plaintiff, and thereafter the plaintiff filed a petition for rehearing of said motion and said objections and thereafter said petition for rehearing was heard before the court, all of said parties appearing by their respective attorneys and the court having heard and considered the additional affidavits filed by the respective parties and having considered all of the record in this action and after hearing arguments and statements of counsel made and announced oral findings and now finds that the real property described in the pleadings and in the mortgage and notice of sale

herein was and is of a value in excess of the amount of the decree of the plaintiff and that the sale of said property by the sheriff for the sum of $950 was unfair, inequitable and grossly inadequate and that any sale hereafter for less than the amount of the decree in this case would be unfair, inequitable and grossly inadequate and the court now being duly and fully advised in the premises and considering all of the record, and findings of the court now therefore,

"It is Ordered, Adjudged and Directed that the plaintiff's motion for the confirmation of sale of the real property herein foreclosed against in the above matter be and the same is hereby denied and that the sale of said real property by the sheriff of King county be and the same is hereby set aside and held for naught; and

"It is Further Ordered, Adjudged and Decreed that the objections of all the defendants to the confirmation of said sale be and the same are hereby sustained and the certificate of sale issued by Claude G. Bannick, Sheriff of King county by virtue of sale of said real property involved herein be returned and delivered over by the purchaser of said property, the plaintiff in this action to the said sheriff and that said certificate of sale be cancelled, set aside and held for naught; and

"It is Further Ordered, Adjudged and Directed that the costs of said sale be borne by the defendants herein, to all of which plaintiff excepts and said exception is hereby granted and allowed."

The affidavits in support of the objections are made mainly by persons engaged in dealing in real estate in the vicinity of this property, and who profess to know the reasonable value of this property. Their affidavits practically consist in saying that the property is worth more than the amount bid at sheriff's sale; and that its reasonable value is, as to two of the affiants, seventeen hundred fifty dollars, as to one, eighteen hundred dollars, and the other fixes the value at two thousand dollars, but seems to admit that the property is in need

of repairs, and gives it as his opinion that, by repairing, the value of the property will be increased more than the cost of repairs.

The counter-affidavits on behalf of the appellant go more into detail. One dealer, of twenty-three years active experience, says that the house is badly out of repair, the roof leaks, and in his opinion, it is untenantable; and that, before the house would be suited for occupancy, it must have an entire new roof, five rooms must be repapered, and other repairs such as painting are necessary; that these necessary repairs will cost approximately two hundred fifty dollars; and he avers that, taking these facts into consideration, the price bid at sheriff's sale is not disproportionate to the value of the property. Others make similar affidavits, none putting the costs of the necessary repairs at less than two hundred dollars.

The appellant himself also filed affidavits in which he agreed with his other witnesses as to the necessity for repairs, costs thereof, and the value of the property; and in addition, stated that there were unpaid taxes and assessments delinquent or due against the property aggregating more than two hundred dollars; that the furnace now in the house has been installed under a conditional sales contract, and to prevent its removal, the sum of $124 must be paid in addition to the necessary repairs, taxes and assessments.

It will be observed that nothing is suggested as to any irregularities in the manner of conducting the sale, nor is any word or act of the appellant tending to impeach his good faith in any manner brought forward or suggested.

The whole question then is: Shall a foreclosure sale, in all respects regularly conducted according to law, be set aside because the full value of the property has not been realized; or, stated a little differently, can

this court say, under the facts here shown, that the sum of $950 is so grossly inadequate as to warrant a court of equity in refusing confirmation? There is, perhaps, also another question involved, and that is whether, in any event, the trial court was justified in naming a minimum or upset price fixed at the amount specified in the decree of foreclosure, as was done in the order appealed from.

It is quite true that our foreclosure proceeding is defined and regulated by our statute, and in a sense it may be said to be a statutory proceeding. Rem. Rev. Stat., § 1121 [P. C. § 8205], provides for a sale under a decree of foreclosure in the same manner as a sale to satisfy an ordinary money judgment.

Rem. Rev. Stat., § 591 [P. C. § 7908], provides for the confirmation of sales of land under execution, and subdivision 2 of that section reads:

"If such objections be filed the court shall, notwithstanding, allow the order confirming the sale, unless on the hearing of the motion, it shall satisfactorily appear that there were substantial irregularities in the proceedings concerning the sale, to the probable loss or injury of the party objecting. In the latter case, the court shall disallow the motion and direct that the property be resold, in whole or in part, as the case may be as upon an execution received of that date."

Is this a mandatory direction which must, even in foreclosure cases, be followed to the exact letter; and if so, what is meant by "substantial irregularities . . . to the probable loss or injury of the party objecting?" The simple and easy answer would be to hold that the statute is mandatory, and that by irregularities is meant the leaving undone something that the statute requires to be done, or the doing of something which defeats the statutory purpose. Such a holding would, however, deprive the courts of all dis-

cretion, and might permit of injustices abhorrent to the conscience of a chancellor.

The Michigan supreme court has held that the jurisdiction of equity in foreclosure proceedings is purely statutory. *Kollen v. Sooy,* 172 Mich. 214, 137 N. W. 808; *Union Trust Co. v. Detroit Trust Co.,* 243 Mich. 451, 220 N. W. 728; *Janower v. Sibley Lumber Co.,* 245 Mich. 571, 222 N. W. 736; and yet, in the case of *Michigan Trust Co. v. Cody,* 264 Mich. 258, 249 N. W. 844, decided but a year ago, that same court, in discussing a question similar to the one now before us, said:

"Appellant asserts that 'inadequacy of the price bid upon foreclosure sale, unaccompanied by fraud, mistake, or irregularity, is insufficient to invalidate the sale or to justify refusal of confirmation.' To this effect several cases are cited, . . . In the instant foreclosure appellant invoked the aid of the court in equity, and in so doing submitted itself to the exercise of the equitable powers inherent in such courts. None of the parties involved may justly complain of an effort on the part of the trial court to ultimately accomplish what it deems equitable as between all parties litigant. In an effort to reach such a result the equity court in the exercise of a fair discretion upon proper showing being made may decline confirmation of a mortgage sale in an equitable foreclosure proceeding if the amount bid is inadequate to the extent that it shocks the conscience of the court. An order of the equity court made in the exercise of its discretionary powers is not in violation of the contract rights of either mortgagors or mortgagees. . . . We are unable to say from this record that the trial judge did not have before him upon the confirmation hearing a showing which justified the following finding made by him.

" 'The court finds as a matter of fact that the mortgaged property at the time of the sale in question was fairly worth a sum largely in excess of the amount bid for the same by the plaintiff, which was the only bid made at the sale in question; but that the absence of

other bids was not due to the lack of value of the property but in part to the fact that owing to conditions resulting from the present acute depression, competitive bids at public sales, particularly on properties of this character and value, had practically ceased to exist; and that under these and the other conditions under which the sale was held, to allow the plaintiff to acquire the property on a bid far below the real value of the same, and which would result in a very large deficiency against the mortgagors, produces a result which shocks the conscience of the court and brings the case within the rule in equity requiring that the sale be not confirmed.' . . .

"In the order for resale the circuit judge included the following:

" 'Provided, however, That on such resale, the said commissioner is hereby directed not to accept any bid less than the amount then due the plaintiff under the said decree, such bid to be made subject to taxes and assessments which may then be a lien on the said premises.'

"This provision in the order was improvidently made. It places too severe a limitation upon the subsequent resale. The fact that there has been a great depreciation in the value of the mortgaged property is no more a reason for penalizing the mortgagees than the mortgagors. Especially in the instant case where a purchaser at the mortgage sale is not only in effect repaying the loan with accrued interest but is also assuming the obligation of paying thousands of dollars for taxes and assessments which presumably under the terms of the mortgage the mortgagors agreed to pay."

So, in New Jersey, in the case of *Federal Title & Mortgage Guaranty Co. v. Lowenstein,* 113 N. J. Eq. 200, 166 Atl. 538, after referring to the statute law governing confirmation of judicial sales, which seems to be different from our own only in the use of negative in the place of affirmative terms, the court said:

"The proviso is a limitation upon the exercise of the power to confirm, the limitation being that the court

*shall not* confirm the sale unless satisfied that the price is the highest and best in cash then obtainable; but it is not a mandate to confirm when so satisfied. The legislature did not intend to control judicial action in refusing to confirm when the mortgaged property does not yield an appropriate equivalent in money, but prescribed an upset criterion or proof of fairness of the bid, which, unless met, confirmation must be denied. The statutory proof is the key to but does not rule the decision. It is still the court's privilege to withhold sanction of a sale which frustrates the aim of our foreclosure act, securing by competitive bidding, the highest and best price, not only to satisfy the debt but as well to save to the owner the value of his equity. It would be inviting a recrudescence of the former harsh remedy of strict foreclosure, whereby the owner lost his all to the mortgagee, if he failed to pay the mortgage debt within a given time, long since abandoned in a spirit of justice to the owner, if upon objection to confirmation of a sale of property clearly worth a thousand for $100, the mortgagee-purchaser could tie the hands of the court by submitting the statutory proof as absolute and invoking the proviso, just quoted, as mandatory.''

The supreme court of Wisconsin, without disclosing whether or not that state has a statute governing confirmation of sales and notwithstanding that it had previously held that mere inadequacy of price was not sufficient ground to justify the ordering of a resale, in the case of *Suring State Bank v. Giese,* 210 Wis. 489, 246 N. W. 556, 85 A. L. R. 1477, said:

''The question presented is one of great importance, and one to which earnest consideration has been given. The court takes judicial notice of the fact that the present economic depression has not merely resulted in a serious dislocation of the value of real estate, but also in the almost complete absence of a market for real estate. As a consequence there is no cash bidding at sales upon foreclosure. In normal times competi-

tive bidding is the circumstance that furnishes reasonable protection to the mortgagor, and avoids the sacrifice of the property at a grossly inadequate sale price. In the present situation the device of a judicial sale largely fails of its intended purpose because of the lack of competitive bidding, and the question arises whether a court of equity is wholly impotent to rise to the needs of justice and see that the parties are fairly and properly protected. This is not a situation in which ordinary logic with respect to values has much vitality. In theory, a thing that cannot be sold has no value, and so with a parcel of real estate that is offered for sale at foreclosure. It may be argued that it is worth what purchasers will pay for it, and no more, and that if the only price offered constitutes but a negligible part of its theretofore assumed value, it nevertheless represents the value of the real estate at that time. Such a conclusion is shocking to the conscience of the court, or, as the old equity courts said, to the conscience of the chancellor, and to all notions of justice as applied to this situation. Certainly the land has value so long as it or the buildings upon it may be used, and certainly in the case of farm lands, which constitute the homes of farmers, the premises have value in the sense of usefulness, however difficult it may be to translate this value into terms of dollars. Furthermore, this real estate, which is suffering from the consequences of a period of readjustment through which we are passing, has potential or future value which may legitimately be taken into account. Its value in terms of dollars has been affected by a general condition. No one piece of land has depreciated in value,—it has all depreciated. It has all suffered from the lack of demand on the part of buyers. Under these circumstances it is within the power of a court of equity, without the aid of statute, to take one or all of three steps for the protection of the parties and the promotion of a fair solution of the difficulties. What is said here is said in the light of the present emergency, and because of the present inadequacy of a judicial sale to establish a fair value for the security.''

In the case of *Chemical Bank & Trust Co. v. Adam Schumann Associates*, 150 Misc. 221, 268 N. Y. Supp. 674, treating of this subject, it was said:

"The power of a court of equity to set aside judicial sales on the grounds of fraud, inadequacy, and the like, has long existed, but is infrequently and sparingly exercised, even in these times of economic upheaval. Within the past few days the learned Chief Justice of the Supreme Court of the United States, in his epochal prevailing opinion in the Minnesota Mortgage Moratorium case *(Home Building & Loan Association v. Blaisdell)*, 290 U. S. 398, 54 S. Ct. 231, 243, 78 L. Ed. —, said: 'In the absence of legislation, courts of equity have exercised jurisdiction in suits for the foreclosure of mortgages to fix the time and terms of sale and to refuse to confirm sales upon equitable grounds where they were found to be unfair or inadequacy of price was so gross as to shock the conscience.' The same principle found earlier expression by the Court of Appeals in *Matter of Superintendent of Banks of State of New York*, 207 N. Y. 11, 14, 100 N. E. 428, 429, where Judge Werner wrote: 'It is, of course a well-settled rule that the Supreme Court has the general power to set aside judicial sales, and it may be exercised as well after confirmation as before. . . . Although this power is discretionary, yet there must be a basis of fact or circumstance for its exercise.' "

In an earlier case, *State ex rel. Kunz v. Campbell*, 5 S. D. 636, 60 N. W. 32, the rule was announced as follows:

"The supreme court, having control over its own judgments and all proceedings thereunder, and having power to exercise this control at the instance of any person whose rights are injuriously affected by such proceedings, has power to set aside and vacate a sale of land made under a judgment upon a foreclosure of a mortgage by an officer thereof, and to order a resale, although there may be no fraud, and the sale was reg-

ular in all respects. An application for a resale is always addressed to the sound discretion of the court of original jurisdiction, and an order granting or denying such a resale is not appealable. The court held in *Wakeman v. Price,* 3 N. Y. 334, that 'such relief, where the proceedings have been regular, cannot be claimed as a matter of right, but simply as a matter of favor. It must, therefore, rest in the discretion of the court to grant or refuse it. It is simply a question of practice in the lower court, as clearly so as an order granting or denying a motion to open a default, to dissolve an injunction, or to allow costs.' Wiltsie, Mortg. Forec. § 529; *Rowley v. Van Benthuysen,* 16 Wend. 372; *Rogers v. Hosack,* 18 Wend. 350.''

In each of these cases which we have discussed, where the facts are revealed in the opinion, they go very much beyond what is here shown, and speaking generally, they indicate inadequacy of price far more pronounced and more shocking to the conscience than is shown on the face of this record, and also, they show an intent on the part of the judgment creditor to take an unfair advantage of existing conditions; and yet these authorities, as we read them, firmly lay down the rule that a court of equity has the inherent power, and it is within its discretion, to act as did the trial court in making the order from which this appeal is taken when the facts justify such action.

With that principle we are in hearty accord, and therefore the present question resolves itself into this: Did the trial court abuse his discretion?

Having in mind the general rule that mere inadequacy of price is not sufficient to avoid a judicial sale, to which rule this court has given its approval, *Johnson v. Johnson,* 66 Wash. 113, 119 Pac. 22, and not intending or desiring to change that rule, can we say that there are here other things, even though

slight, which, added to the inadequacy of price, warrant the action taken? We feel that we cannot. The other things as shown by the record are not things for which the appellant is responsible. They exist in a sense, it is true, but they are the result of general conditions, and it does not here appear that the appellant has taken advantage of them to further his own interests.

It is quite true that the general situation caused by the depression has had far more than a slight effect, and is, perhaps, wholly the cause of the lack of market, the lack of competitive bidding, and the failure of the mortgaged property to bring a greater price; but there is nothing in the record, as we read it, which indicates a deliberate and wilful attempt upon the part of the appellant to take advantage of the general situation to further a selfish purpose and to enrich himself at the expense of the respondents.

All of these other things, outside of the mere inadequacy of price, arise out of the general situation culminating in a condition where, practically speaking, there is no market for real estate, and much property which will be valuable in prosperous times has now no actual cash value. In many cases, no competitive bidding at a judicial sale can be had, and in all such cases the judgment creditor has the power to purchase the property at his own price. In other words, the debtor may be entirely helpless, and the creditor may be all powerful; but, notwithstanding such a situation, it must appear that the creditor has taken a selfish and unfair advantage of the situation to such an extent as to shock the conscience of the chancellor before the extraordinary powers of equity will override the statutory provisions.

The courts must be extremely careful in exercising

these extraordinary equitable powers lest they defeat the rights of the lender in their attempts to protect the borrower. One who borrows and gives security must pay according to the terms of his contract or see his security taken to pay the debt. To overlook or deny the lender's right to insist upon the terms of the contract, would ultimately result in no loans being made, and small home owners and others would suffer seriously as a consequence.

On the face of the record before us, consisting of affidavits submitted to the trial court, we feel that we are in as good a position to judge of the facts as was the trial court; and it appearing that a substantial price was bid, that the property was in disrepair and considerable sums must necessarily be expended to make it fit for occupancy, and these expenditures must either be made in the face of the right to redeem or delayed and the property remain idle and unproductive during the year for redemption, and the record failing to reveal any purpose or intent on the part of the appellant to take a selfish advantage of the situation, we rather reluctantly are forced to conclude that the trial court abused his discretion.

Unquestionably, the order is erroneous in so far as it attempts to make an upset price on resale. On that subject, we adopt the language of the Michigan court, hereinbefore quoted, from the case of *Michigan Trust Co. v. Cody, supra,* though perhaps that subject is not necessarily here.

Being satisfied from the entire record that there is no proof of an actual intent or purpose upon the part of the mortgagee to take a selfish advantage of the general situation, and as it appears that the price bid was a substantial one and in the light of all of the facts and circumstances shown not disproportionate to the then value of the property, the judgment appealed

from is reversed, with directions to confirm the sheriff's sale.

MAIN, MITCHELL, MILLARD, and STEINERT, JJ., concur.

BEALS, C. J., concurs in the result.

HOLCOMB, J. (dissenting)—This matter involves only the sound discretion of the trial judge, which, in my opinion, was exercised soundly. That was the effect of the later Michigan case, the New Jersey case, the Wisconsin case and the South Dakota case, in which cases I heartily concur with the reasoning, but which the majority seem to reject.

There is only one thing in which I disagree with the order of the trial judge, which was in fixing an upset price below which he would not confirm any sale of the property in question, which is beyond his power.

In my opinion, the order directing a resale made by the trial court without fixing any minimum price should be affirmed.

For these reasons, I dissent.

BLAKE and GERAGHTY, JJ., concur with HOLCOMB, J.