[No. 25906. Department Two. March 20, 1936.]

A. E. BLAIR et al., Respondents, v. J. J. HEWITT, Appellant.[1]

'Reported in 55 P. (2d) 607.

*G. C. Nolte* and *Horace G. Geer,* for appellant.

*Hayden, Metzger & Blair* and *Neal & Bonneville,* for respondents.

BLAKE, J.—This is an appeal from an order confirming the sale of personal property sold under a special execution.

The defendant was indebted to the several plaintiffs in the principal sum of $146,862, evidenced by various promissory notes. To secure his indebtedness to the plaintiffs, The First National Bank of Everett, The Bank of California, and The National Bank of Tacoma, he had pledged one hundred shares of the stock of Hewitt Land Company and six hundred shares of the stock of Saint Paul & Tacoma Lumber Company. The defendant had only an equitable interest in the stock of Saint Paul & Tacoma Lumber Company, having acquired this as a dividend from Hewitt Land Company. Prior to the distribution of the stock as a dividend, Hewitt Land Company had made two pledges of it and twenty-five hundred additional shares of the same company to secure its own obligations in the principal amount of $370,000. The pledge of this six hundred shares of Saint Paul stock made by defendant to plaintiffs was subject to the prior pledges made by Hewitt Land Company.

Plaintiffs secured judgment in the aggregate amount of $170,324. This included principal, interest, costs and attorney's fees. The court, in its decree, directed that special execution issue, and that the pledged stock be sold at public auction to satisfy the judgment. The decree provided that the sale be made subject to

confirmation by the court. It also provided that the Saint Paul & Tacoma Lumber Company stock be sold subject to the prior pledges thereof made by Hewitt Land Company. The plaintiffs were accorded the right to bid at the sale either individually or collectively. The sale was had, and plaintiffs bid in the stock for $130,000. This bid was on the basis of $700 per share for Hewitt Land Company stock and $100 per share for that of Saint Paul & Tacoma Lumber Company.

Upon the sheriff's return of sale, defendant filed objections to confirmation on the grounds that: (a) "No proper levy was made on the stock;" (b) "the amount . . . is entirely inadequate and represents only a portion of the value of said personal property;" and (c)

"There was no competitive bidding at the sale, the sole bidder being one of the judgment creditors . . . who had agreed with the other judgment creditors as to the amount to be bid . . ."

After hearing upon the objections, the court entered an order confirming the sale, from which defendant appeals.

■ No question is raised on the appeal as to regularity of the levy or sale. There was no evidence that lack of competitive bidding was in any way chargeable to respondents, except that one did the bidding for all at an amount theretofore agreed to. This they had a right to do. *Spokane Savings & Loan Soc. v. Park Vista Imp. Co.*, 160 Wash. 12, 294 Pac. 1028.

■ The real question presented on the appeal is as to the adequacy of the amount bid. Appellant contends that it is so grossly inadequate as to shock the conscience of the court. In approaching a discussion of the evidence, it is to be borne in mind that mere inadequacy of price is not sufficient to justify setting

a sale aside. If the amount bid is fair under the circumstances, and there is no reasonable probability that a greater amount could be obtained on a resale, the sale should be confirmed. *Johnson v. Johnson,* 66 Wash. 113, 119 Pac. 22; *Mellen v. Edwards,* 179 Wash. 272, 37 P. (2d) 203.

There is no intimation in this record that a greater amount would be bid if a resale were ordered. On the contrary, the argument goes solely to the point that the intrinsic value of the assets of Saint Paul & Tacoma Lumber Company and Hewitt Land Company is such as to warrant a much higher appraisal of stock values than $100 a share as to the former and $700 a share as to the latter. The only evidence of value of the shares adduced by appellant was of "book values" derived from statements of the two companies. From these, appellant derives that Saint Paul & Tacoma Lumber Company stock is worth $517 per share, and that Hewitt Land Company stock is worth $4,242 per share. (It does appear from the record that certain shares of Hewitt Land Company stock were valued in 1933 at $2,000 a share for inheritance tax purposes.)

With respect to the Saint Paul stock, it is clear from the record that its "book value" had little relationship to its "market value." While there does not appear to have been much trading in it, there was evidence of sales at from $90 to $115 a share, and there was ample credible opinion testimony that $100 per share was its reasonable market value. Furthermore, appellant himself had sold some of the stock at $150 per share.

Accepting this price as a fair criterion of value, we still think that, in view of the prior liens created by Hewitt Land Company, the Saint Paul stock brought all and more than appellant's equity in it was worth.

434

In saying this, we are not unmindful of appellant's contention that the pledgees of Hewitt Land Company hold other collateral sufficient to liquidate their loans. Whether this be so is, as we read the record, entirely problematical.

The stock of Hewitt Land Company had no "market value" for the reason that it was a close corporation, the capital stock of which (500 shares) was wholly owned by members of the Hewitt family. The principal assets of the corporation consist of timber lands in Washington, Oregon and California. Witnesses estimated the value of these timber holdings at from $1,250,000 to $1,465,000. The company's indebtedness amounted to $581,000. It had no operating revenues of any consequence. Except upon a comparatively small portion of its holdings, there were four years delinquent taxes. The company was insolvent in the sense that it could not meet its obligations as they came due. There is no suggestion that the stock of the company was salable at all. That it did have intrinsic value, however, is evidenced by the fact that respondents bid $700 a share for it.

What the intrinsic value of the stock may be is dependent on a number of factors. For, obviously, the company is in an embarrassed situation, in that it has no operating revenues with which to meet its interest and tax charges. Its future depends upon the liquidation of capital assets, the result of which in turn depends upon the attitude of the company's creditors and the marketability of its timber. In any view of the situation, the intrinsic value of the stock of the company is entirely problematical. If the liquidation be successfully conducted, the stock might prove to be worth much more than $700 per share. On the other hand, it might prove to be worth much less.

Under the circumstances, we think the bid was fair. In fact, considering the hazards attendant upon liquidation of the company's assets, we do not see how respondents could, in justice to their depositors, have bid more. Since there was no showing that there was any reasonable probability of procuring a higher bid on a resale, the court properly confirmed the sale.

Judgment affirmed.

TOLMAN, BEALS, and MAIN, JJ., concur.

[1]Reported in 55 P. (2d) 604.