[No. 26557. Department Two. September 16, 1937.]

CLAY PUETT, *Appellant,* v. E. E. BERNHARD *et al., Respondents.*[1]

[1]Reported in 71 P. (2d) 406.

558

*Colvin & Rhodes,* for appellant.

*Vanderveer & Bassett* and *A. B. Jackson, Jr.,* for respondents.

BEALS, J.—Clay Puett instituted this action in equity for the purpose of setting aside a default judgment entered against him by a justice of the peace for Seattle precinct, pursuant to which personal property belonging to the plaintiff was levied upon by the sheriff and exposed for sale. Defendant E. E. Bernhard bid in the property for $89.93, the amount of the judgment, interest, and costs, and in this action plaintiff also attacks this sale and asks recovery of his property, alleging that, after the sale, he had tendered the amount paid for the property, and, the tender having been refused, that the amount was tendered into court for the benefit of the person entitled thereto. From a judgment dismissing the action, plaintiff has appealed.

Appellant assigns error upon rulings of the trial court striking certain testimony and admitting in evidence a letter from one Bengston; also upon the entry of judgment dismissing the action, and the denial of appellant's motion for a new trial.

Briefly stated, the facts of the case are as follows: Appellant claims to have invented and had constructed and was the owner of an appliance known as a starting gate, used in horse racing. Appellant rented these gates to persons operating race tracks, appellant sometimes being employed as starter to operate the same. He had applied for a patent, but it does not appear that his application had been allowed. He

testified that the usual rental charge for a gate was fifty dollars per day, but for the 1935 racing season he had rented a gate to respondent Washington Jockey Club for half this amount.

During the month of November, 1934, appellant had rented a similar gate to a California association, the management of which suggested that the gate would be improved by some mechanical addition. Appellant ordered, from Round California Chain Corporation, material necessary to make the correction, as he testified, for the account of the lessee. The purchase price of the material amounted to $191.88. For the purposes of this opinion, it may be assumed, as contended by appellant, that the California lessee was, in fact, ultimately liable for the bill. In any event, appellant himself made certain payments on account, a balance of $46.88 finally remaining due. An agent of the Chain Co., testifying as a witness for appellant, stated that the latter told him that he would see that the account was paid or he would pay it himself, and it is evident that the creditor was looking to appellant for payment, and that appellant knew this. The balance remaining unpaid, and appellant having removed to the state of Washington, the Chain Co. assigned the account to respondent E. A. Niemeier, of Seattle, for collection.

Mr. Niemeier testified that he talked to appellant over the telephone, and that appellant promised to pay the balance due. Prior to this telephone conversation, Mr. Niemeier had written two letters to appellant, threatening suit and levy, and finally, the account remaining unpaid, instituted an action in justice court, for the purpose of recovering judgment for the balance owing. This suit was dismissed September 16, 1935, without service upon appellant.

On the same day, Mr. Niemeier instituted a second

action against appellant, issuing a writ of garnishment against respondent Washington Jockey Club. The Jockey Club answered the writ of garnishment, stating that it had in its possession a starting gate belonging to appellant. It appears that this was the gate which had been rented from appellant during the 1935 racing season, the gate having been, with the Jockey Club's consent, left on the club's property. Service was had on appellant by publication, and no appearance in the action having been made by him, judgment was rendered against him by default November 12, 1935, and December 11th following, the gate was sold by respondent sheriff for $89.93, the amount of the judgment, interest, and costs. The gate was bid in by respondent E. E. Bernhard, an employee of respondent Jockey Club.

Appellant testified that he knew nothing of the suit or the garnishment until January, 1936, and that, as soon as he heard of these proceedings, he immediately wired respondent Gottstein, asking for information concerning the matter, and also wired an attorney in Seattle to investigate the situation. He contends that the starting gate is worth twelve thousand dollars, and vigorously contends that respondents Bernhard, Gottstein, and the Jockey Club purposely refrained from advising him of the situation, pursuant to an unlawful intent to acquire the starting gate for themselves. Appellant argues that the record discloses a state of facts against which equity will relieve, and that, while this court has held that a sale will not be set aside solely upon the ground of inadequacy of price, slight additional circumstances in connection with inadequacy of price will entitle one unjustly dealt with to relief.

In the first place, appellant argues that the debt on which he was sued was not his debt. As

between appellant and the California racing association this may be true—upon this point we express no opinion—but the record clearly shows that the Chain Co. was justified in endeavoring to collect the amount due from appellant, he having made payments on account and promised to pay the balance, and that no possible ground exists for charging the Chain Co. or its assignee with bad faith in endeavoring to collect and enforce payment of this bill. Appellant is not entitled to any relief in connection with this phase of the case.

Appellant next argues that he is entitled to consideration because judgment was entered against him by the justice of the peace on default, after publication of notice, and that he had no opportunity to defend the action. This is strictly a legal problem. If the default judgment was void for any reason, appellant is entitled to relief. If not void—and no jurisdictional defect is called to our attention—a judgment by default is just as good as any other judgment, and whether or not appellant knew that he had been sued, is immaterial.

Appellant next argues that respondent Jockey Club and respondents Bernhard and Gottstein, its officers and agents, occupied toward him positions of trust, and that, because of their conduct in acquiring the gate, he is entitled to the relief he asks. This presents the serious question to be determined.

It should be noted that appellant had no permanent address. He alleged that he was at all times a resident of King county, Washington, but on cross-examination admitted that, when in traveling he registered at different hotels, he would register sometimes from Portland, sometimes from California, "or the last place I arrived from." He stated that the last time he voted was in 1932, in Colorado, and in answer to the ques-

tion, "Where do you live, Mr. Puett," he answered, "Wherever I register at a hotel now." He was unable to remember any occasion on which he had given his residence as in Seattle. He further testified: "I have no home except where I register at a hotel. When I pay my hotel bill and get out I have no home there any more."

The trial court, in its written memorandum decision, after observing that appellant contended that the starting gate was worth twelve thousand dollars, stated that any such valuation was grossly excessive, that the property might be worth two thousand to twenty-five hundred dollars, and that the use of the gate might be subject to an action for patent infringement, appellant having admitted that such an action had been commenced in the state of California. The evidence clearly supports the opinion of the trial court as to the value of the starting gate.

As to conversations and transactions between appellant and the officers and agents of respondent Jockey Club, the evidence is in hopeless conflict. Respondent Gottstein testified that he told appellant, prior to the sale, that there was some trouble about a garnishment affecting the gate, and it appears that the attorneys for respondent Jockey Club wrote to appellant at Spokane, in care of a race track where he was employed, telling him that attempts were being made to subject the gate to the claim on which the justice court action was based. The trial court was convinced that this letter was actually mailed to appellant, although he denied its receipt. In the memorandum decision, the court said:

"In my statement at the close of the case in deciding the other phases of this matter, I expressed some conclusions regarding the plaintiff which I do not intend to reiterate here. Suffice it to say the court could not

place a great deal of confidence in any of his testimony."

The reading of appellant's testimony demonstrates that it is in many respects unsatisfactory, and the trial court having had the added advantage of observing and hearing the witness, we cannot say that the court too severely criticized his testimony.

The record discloses that, during the direct examination of respondent Gottstein, the following occurred:

"Q. Have you ever been specially interested in the purchase of this particular gate? A. No, sir. Q. If these gentlemen want their gate back for what it cost you, can they have it? A. Gladly. Q. Gladly? A. Gladly. Q. And by that I mean of course the cost of improvements and repairs you have made on it? A. Just what they can substantiate by checks that we paid on it."

This incident is referred to by the court in its memorandum opinion in the following language:

"An opportunity was offered him during the trial to pay the judgment and for the repairs which the Jockey Club put upon the property. Plaintiff did not see fit to avail himself of this offer; so the question was left for the court to decide strictly upon the merits."

Respondent Gottstein testified that, during the month of September, he saw appellant in Spokane, and told him that appellant's gate had been subjected to garnishment, and that appellant told the witness that he was going to Seattle and would take care of it. Mr. Gottstein also testified that, during the month of December, he met appellant at a race track in California, and again told him that the gate was going to be sold pursuant to the writ of garnishment.

There is in evidence a carbon copy of a letter addressed to appellant, bearing date September 5, 1935, written by the firm of attorneys then representing the Jockey Club, in which appellant was advised that the

Jockey Club had been garnished, and that the gate could not be removed until the claim was satisfied. The letter included a request for one hundred dollars, with which to pay the claim, costs, and attorney's fees. This letter referred to the first justice court action instituted, in which the writ of garnishment had been directed to "Longacres Race Track," as garnishee. The fact that the garnishee had been erroneously named was apparently the cause for the dismissal of the first action. This writ, however, doubtless came to the respondent's attention, and was a proper and natural occasion for the letter which was written to appellant by the attorneys who were then representing respondent Jockey Club. Appellant denied receiving this letter, but, as above stated, the trial court in its memorandum decision stated that the letter was written, and we find no reason for believing otherwise. Appellant denied that Mr. Gottstein or anyone ever told him of the suit, or that the gate was in jeopardy. As to these disputed questions of fact we find no reason for disagreeing with the trial court's estimate of the situation and its finding against appellant.

Appellant relies upon the case of *State ex rel. Northern Pac. R. Co. v. Superior Court*, 101 Wash. 144, 172 Pac. 336, in which this court stated that it is the rule in this state that a party may, after the expiration of the time limited by law, by bill in equity obtain relief against a judgment, where its enforcement would result in inequity.

In the earlier case of *Morrison v. Steenstra*, 45 Wash. 175, 88 Pac. 104, the court granted relief in a case where property worth $4,000 was sold for $553. In the case cited, the judgment debtor was mentally incompetent to protect his rights.

In the case of *Bank v. Doherty*, 37 Wash. 32, 79 Pac. 486, a note and mortgage worth $2,400 were levied

upon and sold for $110. The court stated that, "in view of the manner in which possession of the note was obtained, and the whole surroundings," the owner of the property was entitled to relief.

In the case of *Triplett v. Bergman,* 82 Wash. 639, 144 Pac. 899, this court granted relief, quoting from *Graffam v. Burgess,* 117 U. S. 180, 6 S. Ct. 686:

" 'Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise the presumption of fraud'."

Many other cases are cited to the same effect.

Appellant assumes, we think correctly, that as to the gate, respondent Jockey Club was a gratuitous bailee, and owed to appellant the duty to use reasonable care in the protection of the property.

Respondent distinguishes the authorities cited by appellant, and cites several authorities in support of the judgment of the trial court. In the case of *Johnson v. Johnson,* 66 Wash. 113, 119 Pac. 22, it appeared that the parties had been husband and wife, and that, in an action for divorce, the community property had been divided, one lot having been awarded to the plaintiff, against whom there was entered a judgment for $140. Execution was issued on this judgment, and the lot referred to levied and sold. The plaintiff sued to set aside the sale, alleging that no notice had been given him, and that the sale was fraudulently procured. The trial court set the sale aside, which order was reversed on appeal, this court holding that the sale was regular, and that equity would not relieve against any hardship resulting therefrom. The property was variously estimated as worth from $1,000 to $1,800, and was sold for $105.50.

In the recent case of *Mellen v. Edwards,* 179 Wash. 272, 37 P. (2d) 203, this court, referring to the *Johnson* case, stated that it did not desire to change the rule

therein announced. The *Johnson* case was also cited in the case of *Betz v. Tower Savings Bank*, 185 Wash. 314, 55 P. (2d) 338.

In the case of *Blair v. Hewitt*, 185 Wash. 430, 55 P. (2d) 607, we again said that mere inadequacy of price is not sufficient to justify setting a sale aside. The case of *Washington Mutual Savings Bank v. Horn*, 186 Wash. 75, 56 P. (2d) 995, is to the same effect.

We agree with the trial court that the inadequacy of price in the case at bar, coupled with all the other circumstances disclosed by the record, did not require the entry of judgment setting the sale aside.

As noted by the trial court during the trial, appellant was offered an opportunity to obtain his property by paying the judgment and a sum equal to the cost of repairs which respondents had made upon the gate, and appellant made no attempt to avail himself of this offer.

Finally, appellant contends that it was the duty of respondent Jockey Club to give notice of the garnishment to appellant, citing several authorities in support of this general proposition. These authorities seem to be to the effect that a garnishee must give proper notice to his creditor of the fact that he has been garnished and, if he fails to use reasonable efforts to give such notice, cannot use the garnishment as a defense to a subsequent action by his creditor against him. None of the authorities cited is directly in point, and several of the decisions are based upon facts so utterly different from those here present that the authorities are not helpful in determining the question here presented. Appellant was not a creditor of respondent Jockey Club, the latter being merely a gratuitous bailee. Respondents, of course, contend that appellant was notified of the garnishment and afforded reasonable opportunity to protect himself.

We find no error in the admission or rejection of evidence.

The trial court determined the disputed questions of fact against appellant, stating that little reliance was to be placed upon appellant's testimony. As stated by the trial court, appellant elected to stand upon the record, demanding what he believed to be his rights under the law. It cannot be held that the trial court did not accurately determine disputed questions of fact in respondents' favor, and while the case is one of some hardship, the record contains no reversible error.

The judgment appealed from is accordingly affirmed.

STEINERT, C. J., HOLCOMB, GERAGHTY, and ROBINSON, JJ., concur.

