## WHITNEY v. NATIONAL EXCHANGE BANK OF NEWPORT.

### (Circuit Court, D. Rhode Island. December 8, 1897.)

#### No. 2,515.

1. MORTGAGE FORECLOSURE—SURPLUS PROCEEDS—JUNIOR MORTGAGEE—ESTOPPEL.

Bill in equity by a junior mortgagee for an accounting from a bank, an elder mortgagee, for surplus proceeds of a foreclosure sale by the bank. At the sale the bank's special agent, authorized to bid a sum sufficient to cover the elder mortgage, by mistake exceeded his authority, and bid a larger sum. *Held*, that the bank was not estopped to set up the mistake and lack of authority, or to deny its receipt of the sum bid.

2. SAME—EQUITABLE RELIEF.

That failing to show that the bank had received any actual surplus, or to prove that the junior mortgage had any actual value, or to offer any evidence thereof except the bid made by the agent through mistake, the complainant had shown no substantial title to equitable relief.

This was a suit in equity by Nathan Whitney against the National Exchange Bank of Newport.

William B. Whitney, for complainant.

William P. Sheffield, for respondent.

BROWN, District Judge. The complainant, Whitney, as holder of a fifth mortgage on real and personal estate, prays that the respondent bank, an elder mortgagee, account for a surplus arising upon a sale at auction by the bank under a fourth mortgage. At the sale the property was offered by the auctioneer, subject to three prior mortgages, the amount whereof was not stated. Upon a single bid of $6,000, the property was declared sold to one Milliken, as agent for the bank. The bank has not perfected a paper title under this sale, and denies that Milliken's bid is binding upon the bank, for lack of authority. The evidence of Milliken's lack of authority to bind the bank to the amount of $6,000 is clear. His agency was special, and his authority limited, and gave him no right to bid more than $1 in excess of the amount of the four mortgages prior to the complainant's. Though he correctly understood the extent of his authority, he was led to exceed it by a mistaken belief as to the subject-matter of the sale, supposing that he was bidding upon the property free from incumbrances, instead of subject to the liens of the mortgages. The complainant invokes by his bill the doctrine of equitable estoppel to preclude the defendant "from denying that it did pay to itself, or did set apart in payment, the said sum of $6,000, for which it sold and purchased * * * said * * * land." In my opinion, however, the complainant has failed to make out a case for the application of this doctrine.

In Dickerson v. Colgrove, 100 U. S. 578, it was said concerning equitable estoppel:

"The vital principle is that he who, by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. This remedy is always so applied as to promote the ends of justice. It is available only for protection, and can-

not be used as a weapon of assault. It accomplishes that which ought to be done between man and man, and is not permitted to go beyond this limit."

The present case appears to me an attempt to misapply this doctrine to procure for the complainant a large sum, to which he has shown no just or substantial title, and to create out of the unauthorized act of the bank's special agent—the result of a clearly-proven mistake—a wholly inequitable measure of the money value of the complainant's right. The foundation of the complainant's right was his interest as owner of a fifth mortgage of property, upon which were prior incumbrances amounting to about $15,000. The bill fails to allege that the property was of any value over these mortgages, and there is in the case no testimony sufficient to show that the complainant's paper security had any actual value. On the contrary, the course of dealings between the complainant and the bank, and the subsequent sale of the property under the third mortgage, for a price insufficient to satisfy the mortgage liens prior to the complainant's, together with the fact that the respondent bank has failed not only to realize any actual surplus, but also to secure the full amount of its own claim under the fourth mortgage, might well be considered sufficient proof that the complainant's mortgage was a mere paper security, without actual value.

A complainant who seeks the aid of a court of equity must make out by affirmative proofs that he has a substantial right. The sole evidence of such a right in this case is the fact that Milliken made a bid of $6,000, and that the property was struck off to him subject to the prior mortgages. The mistake of Milliken as to the subject-matter of the sale makes his bid entirely worthless as an indication of the value of the property actually offered for sale by the auctioneer. Although the bill alleges that the complainant's conduct was influenced by Milliken's acts, and by his ostensible authority, and that, in consequence, he did not bid at the sale, or attend a subsequent sale under the third mortgage, there is no evidence to support these allegations, and considerable evidence to the contrary. It is very remarkable that the complainant has given no testimony in the case, and that, though many of the matters set forth in the bill are peculiarly within his own knowledge, his failure to testify is unexplained.

The presumption from the unexplained absence of material testimony is entirely unfavorable to the case stated in the bill. Taken in connection with the evidence, which conclusively proves that in making the sale the respondent had no other object than the payment of its own claim; with the agreement of the bank prior to the sale that the complainant might repurchase from the bank at whatever price it should bid the property in for; with the fact that, on the morning following the sale, the bank, in accordance with this agreement, presented the complainant's son and agent with a memorandum of the amount of the incumbrances, as the price for which the complainant might receive a conveyance of the property; this presumption leads to the conclusion that the grounds of estoppel set up in paragraph 9 of the bill are without foundation in fact. Not only does it appear that the bank has not in fact received any benefit which in equity belongs to the complainant, but it is also apparent that the respondent,

both before and after the sale in question, gave the complainant the fullest opportunity to redeem, and offered favorable terms of redemption.

That the complainant understood that his agreement with the bank before the sale was such that his rights were not substantially affected thereby is apparent from his letter to the treasurer of the bank, written after the sale. The letter is as follows:

"Bennington, Nov. 12, 1889.

"Mr. Norman—Dear Sir: We have been thinking the hotel matter over since the sale, and, in the first place, we are a long distance away, and as my foreman on the farm thinks he cannot stay another year with me, so that I will probably have to be out there a longer term next spring than usual, so that it may not be convenient for me to give any time to the Block Island property, I told my son how I should probably be situated, and if he thought best, and could make a sale of it, or, in case we were not able to make a sale before spring, would run it, I would try and fix the security with you. Will graduate late next June, and will necessarily be very busy this winter and spring, and writes that he does not think it best for us to try to have anything to do with it. Under the circumstances, it will be necessary and best for us not to attempt to redeem it.

"Yours, truly, Nathan Whitney."

All that the complainant can claim from a court of equity is just compensation or a restitution of rights. As this complainant fails to show any loss for which compensation should be made, and has deliberately abandoned the opportunity to secure his interest in the property upon just and equitable terms, the present bill can be regarded only as an attempt by a mortgagee whose security was worthless to create, out of the mistake of the defendant's special agent, a fictitious valuation of a worthless security, and to base upon this valuation his appeal for the intervention of a court of equity.

To sustain his bill would be an act of great injustice to the respondent. For the unauthorized act of its special agent, resulting from a mistake, without any proven damage to the complainant, the respondent, in addition to its own loss as a prior mortgagee, would be compelled to pay a large sum, which the complainant on no principle of equity or justice is entitled to receive. The bill will be dismissed, with costs.