[No. 26359.  Department Two.  March 26, 1937.]

PRUDENTIAL SAVINGS & LOAN ASSOCIATION, *Respondent,*
v. WARREN H. STEWART *et al., Appellants.*

WARREN H. STEWART *et al., Appellants,* v. PRUDENTIAL
SAVINGS & LOAN ASSOCIATION, *Respondent.*[1]

[1] Reported in 66 P. (2d) 304.

*Geo. E. Henry,* for appellants.

*Karl H. Kober* and *G. E. Steiner,* for respondent.

HOLCOMB, J.—The original action involved herein was instituted by respondent as assignee to foreclose a mortgage executed by appellants on realty in Mason and King counties, Washington, and a decree of foreclosure was entered April 6, 1934. Under this decree, the Mason county real estate was sold first for $5,500. Thereafter, the King county property was advertised for sale by the sheriff. Prior to the sale, respondent instructed Mrs. Anderson, a deputy sheriff, who for many years had been in charge of real estate sales in King county, to bid such sum therefor as would leave a deficiency judgment in its favor of five thousand dollars. Upon receipt of such instruction, Mrs. Anderson made a penciled memorandum on the back of the order of sale.

Mr. Steiner, attorney for respondent, testified that he advised Mrs. Anderson of the sale of the Mason county property for $5,500 and instructed her to deduct that sum from the judgment and then to bid a sum which would leave a deficiency of five thousand dollars. Although this testimony is not disputed by Mrs. Anderson, she stated that she did not remember receiving any information with reference to the Mason county sale. The trial judge, however, believed and credited the testimony of Mr. Steiner.

The foreclosure decree, including costs and attorneys' fees, amounted to $41,741.14, and instead of deducting the $5,500 bid for the Mason county property, which would leave $36,241.14 unpaid on the judgment, Mrs. Anderson made a bid of $41,612.75. This was only five hundred dollars less than the amount of the judgment and interest to date of sale, plus attorney fees, costs and increased costs. In other words, Mrs.

Anderson bid such sum as would leave a deficiency judgment of five hundred dollars instead of five thousand dollars, as she was instructed. When the amount bid on the Mason county property is considered, there is no actual deficiency judgment, but the execution docket, when both bids are considered, would show bids in excess of the amount of the judgment, costs, etc. This mistake on the part of Mrs. Anderson was not discovered nor known to respondent until appellants started the independent suit hereinafter mentioned.

Appellants instituted an action claiming from respondent the alleged five thousand dollar surplus, averring that the amount of the two bids exceeded the amount of the judgment and costs by the sum of five thousand dollars. Appellants also procured an order in the original action requiring respondent to show cause why it should not pay the alleged excess amount to appellants or to the sheriff.

Respondent, answering the complaint of appellants in the independent suit, set forth all of the facts with reference to both sales and fully alleged all of the facts with respect to instructions to Mrs. Anderson and the mistake or error made by her in carrying out respondent's instructions in the making of the bid, and likewise pleaded the same facts in its return to the show cause order.

There were other proceedings in the foreclosure action by ex-sheriff Bannick, who was the sheriff at the time of the foreclosure sale in King county, and by present sheriff Severyns, consisting of motions both to amend the return of the sheriff so as to make it speak the truth and to set aside the sheriff's sale and all proceedings thereunder, which are now immaterial.

The various actions, suits and proceedings were consolidated for trial. It was also stipulated that the

trial court should consider the pleadings of each party in both proceedings, the answer of the other party to such pleadings, and that one judgment should be entered in both cases and proceedings as so consolidated.

Appellants appealed only from those portions of the decree which denied and dismissed their show cause order and from that portion giving them an option to purchase that property for twenty thousand dollars and from that portion dismissing their independent suit and denying costs to each party.

The record in both of these proceedings has been very skillfully compacted by counsel for appellant in one very satisfactory bill of exceptions, a practice to be commended and more generally followed. This one comprises sixty-seven typed pages.

Appellants quote Rem. Rev. Stat., § 591 [P. C. § 7908] (4), reading:

"(4) . . . An order confirming a sale shall be a conclusive determination of the regularity of the proceedings concerning such sale as to all persons in any other action, suit or proceeding whatever."

Appellants also cite Rem. Rev. Stat., §§ 591 and 1128 [P. C. §§ 7908, 8209], to the effect that the mortgagor is entitled to the surplus obtained by the sale of the mortgaged property of five thousand dollars. There was no actual surplus of five thousand dollars, hence the last two cited sections cannot apply. What was intended to be a deficit of five thousand dollars was to be created, instead, but for the mistake of the deputy sheriff in her bid for respondent. The deputy sheriff was merely a special agent of respondent with specific instructions and limited authority.

We have no disposition to ignore or modify the long established rule in this state, and generally, to the effect that, under Rem. Rev. Stat., § 591(4), where

there is no irregularity in the conduct of a sale it concludes inquiry into the irregularities attending the sale. That has been the rule in this state from *Parker v. Dacres,* 1 Wash. 190, 24 Pac. 192, to *Brady v. Ford,* 184 Wash. 467, 52 P. (2d) 319.

None of the cases cited from this state, or others, are applicable to the case at bar under that section. No attack is made by respondent, or any other party, on the sheriff's sale as confirmed. It stands exactly as it stood before any of these proceedings were instituted. The defense of respondent was and is an equitable defense predicated upon the proposition that appellants should not and cannot, under the law and principles of equity, be unjustly and unconscionably enriched at the expense of and to the detriment and injury of respondent because of an error and mistake of the deputy sheriff who conducted the sale only as the special agent of respondent.

Evidence was received by the trial court, none of which was contradicted, showing that the King county property at the time of the sheriff's sale was not worth in excess of fifteen thousand dollars. At the trial in open court, respondent voluntarily offered to convey that property to appellants for twenty thousand dollars. Such testimony as to value was material and competent. *Olmsted v. Melville,* 93 Colo. 567, 27 P. (2d) 589; *Whitney v. National Exchange Bank,* 84 Fed. 377.

Appellants argue that they are entitled to prevail under either one of three theories.

(1) That, in a judicial sale of property, the vendor retains an equitable lien thereon for the benefit of those persons interested in and entitled to the proceeds of the sale; and, after confirmation of the sale, equity will summarily compel a defaulting purchaser to comply with his bid, or will resell the property

under the equitable lien without right of redemption, citing 16 R. C. L. 167, and several outside cases. In the first place, appellants are not vendors. It is conceded, however, that there is no vendor's lien as at common law in this state since *Shelton v. Jones*, 4 Wash. 692, 30 Pac. 1061, to *Atkinson v. Melcher*, 160 Wash. 94, 294 Pac. 567. See, also, *Nichols v. DeBritz*, 178 Wash. 375, 35 P. (2d) 29.

Those decisions being contrary to the rule in most jurisdictions, it is difficult to see how appellants can be aided by them. Equitable liens are not recognized in this state unless there is some instrument upon which they may be based and a sum of money due another. In the case at bar, there is absolutely no money due appellants from respondent. On the contrary, there is considerable due from appellants to respondent.

■ (2) That the purchaser at sheriff's sale or other judicial sale, after confirmation, can be summarily compelled to comply with his bid by rule in the original cause, citing *Rice v. Ahlman*, 70 Wash. 12, 126 Pac. 66, and *State ex rel. Chard v. Androw*, 171 Wash. 178, 17 P. (2d) 874.

Here, again, the answer to the first theory answers this. There is no money due appellants.

(3) That, if there exists no equitable lien in this state as argued under the first theory, then the property passed to respondent under sheriff's deeds free from liens and is subject to appellants' writ of attachment for payment of a general judgment, when procured, in a direct action against respondent, citing *Moody v. Northwestern & Pac. Hypotheek Bank*, 20 Wash. 413, 55 Pac. 568, and cases therein cited.

If it could be said that there is any money due appellants which could ever be recovered from respond-

ent by attachment or any other process, that theory might possibly be correct, but that is not true.

The facts in this case are very similar to those in the *Olmsted* and *Whitney* cases, *supra,* as well as in *Brooks v. Bennett,* 277 Mass. 8, 177 N. E. 685, and *Peterson v. First Nat. Bank,* 162 Minn. 369, 203 N. W. 53, 42 A. L. R. 1185, to all of which we refer for discussions and which are sufficiently like this case to govern it. See, also, 2 Restatement of the Law of Contracts, § 507 (2).

The judgment is right and is affirmed.

STEINERT, C. J., TOLMAN, GERAGHTY, and ROBINSON, JJ., concur.

