[No. 12039.  Department One.  December 17, 1914.]

## D. B. TRIPLETT, *Appellant*, v. M. L. BERGMAN *et al.*, *Respondents*, BERGMAN CLAY MANUFACTURING COMPANY, *Garnishee Defendant.*[1]

EXECUTION — SALES — VACATION — INADEQUACY OF PRICE—FRAUDU-
LENT AND UNFAIR METHODS. Where a judgment for costs in the sum of $132 was granted a corporation against certain minority stock-holders, and in the interests of majority stockholders, who desired to wipe out the minority interest for a nominal sum, the judgment was assigned to a third person who brought suit against the minority stockholders on the judgment and garnisheed their stock, whereupon the stock of defendants was sold on execution at a grossly inadequate price, and the defendants, immediately on hearing.of the sale, at-tacked the sale as for an inadequate price and tendered the amount of the judgment, upon the principle that the law requires and will hold men to a just standard of right when seeking aid in the courts, the circumstances vested the trial court with a discretionary power to set aside the sale, which will not be controlled where it appears that the sale would outrage the rights of the judgment debtor.

Appeal from a judgment of the superior court for Spo-kane county, Sullivan, J., entered January 5, 1914, in favor

¹Reported in 144 Pac. 899.

of the defendants, vacating sales on execution of corporate stock, tried to the court. Affirmed.

*F. B. Dodds* (*Twitchell & Wentworth*, of counsel), for appellant.

*F. W. Girand*, for respondents.

CHADWICK, J.—This court reversed the case of *Bergman Clay Mfg. Co. v. Bergman*, 73 Wash. 144, 131 Pac. 485, and remitted the case, with costs to the appellant in the sum of $132.40. Although the record is not entirely clear, it seems that no judgment was entered in the court below upon the remittitur. The judgment was assigned to plaintiff in this case, who began an action upon the judgment and caused the Bergman Clay Manufacturing Company to be summoned as a garnishee. The Bergman Clay Manufacturing Company answered, admitting that M. L. Bergman was the owner of 6,500 shares of its capital stock, and that Emily Bergman was the owner of 1,216 shares of its capital stock. A judgment was taken against the garnishee and all of the stock belonging to the Bergmans was sold by the sheriff, and bid in by the plaintiff for the amount of the judgment and costs. The sale occurred in September, 1913. On the 6th day of December notice came to the Bergmans that their stock had been sold. They immediately applied to the court for relief, setting up several grounds, going to the legal sufficiency of the proceeding and the inadequacy of the price paid for the stock. The court below seems to have determined the case entirely upon a finding that the stock was bid in at an inadequate price.

Passing, therefore, the legal proceedings as sufficient, it is the contention of the appellant that a sale should not be set aside on account of the mere inadequacy of the price paid for the property upon execution sale. This is a general rule, but like all rules it has its qualifications and exceptions. Appellant undertakes to hold himself within the general rule by insisting that the stock was of little or no value, but there

is testimony tending to show that the Bergman Clay Manu-
facturing Company has on hand about $10,000 worth of un-
sold manufactured products, which ought to bring $7,000;
that its plant is worth in the neighborhood of $10,000; that
the stockholders other than the Bergmans are owing in un-
paid subscriptions about $9,000 and that the debts of the
company are about $10,000.   While it is true that the de-
fendant's witnesses who are stockholders in the company have
testified that the company cannot be operated at a profit
without the expenditure of $20,000 or more in betterments,
we think that the interest of the witnesses is such that the
trial judge was warranted in rejecting their testimony; for
upon the facts shown the stock would be worth a sum greatly
in excess of the amount bid if the company were liquidated
at the present time.   The Bergmans have paid for their stock.
Those who are hostile to them have not.   It is not denied
that plaintiff has no real interest but is acting for the ad-
verse stockholders.   The attempt to bring all of the stock
within their control at a nominal cost and without reference
to its fair value is apparent.   The prime object of the pres-
ent suit is obviously to oust a troublesome minority and not
to recover the small amount allowed by this court in the way
of costs, a sum which has been tendered and which in justice
ought to have been accepted.

The governing rule has not always been stated in the same
way.   Some courts hold that mere inadequacy of the price
bid is not sufficient to avoid a sale; others that inadequacy of
price, coupled with slight circumstances, is enough; while
others hold that an inadequacy of price so gross as to shock
the conscience is in itself enough.   The subject is well treated
in Freeman on Executions (3d ed.), 304-I, and 309; 17 Cyc.
1276-1278.   In this case, we are not put to the necessity of
relying upon any one of these statements, for, as we find the
facts to be, the case falls within well grounded exceptions.

The law requires and will hold men to a just standard of right when they come seeking the aid of the courts. They must pursue an open and straightforward course. When judicial sales are made under circumstances inviting the interposition of the chancellor, a duty is put upon the court to "watch with suspicion and to censure with firmness the least departure from fairness in conducting them." *Collier v. Whipple*, 13 Wend. (N. Y.) 224.

While the courts have expressed themselves in various language, we are of opinion that the sum and essence of the law upon the question involved in this case is that there is a discretionary power vested in the trial judge, and where it is made to appear that the sale would outrage the right of a judgment debtor if allowed to stand, his discretion will not be controlled, for, as is said in *Howell v. McCreery*, 7 Dana (Ky.) 388, where a judicial sale was challenged for inadequacy of the sum bid,

"Public policy and the analogies of the law require that they should be considered *per se* as in the twilight between legal fraud and fairness, and should be deemed fraudulent, or in trust for the debtor, upon slight additional facts."

This case is quoted in *Shroeder v. Young*, 161 U. S. 334, a case following *Graffam v. Burgess*, 117 U. S. 180, where the rule is stated thus:

"Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise the presumption of fraud."

The trial judge said, in passing upon the case, "an open and fair deal is the first principle that ought to govern men in business together and I do not consider that this is an open and honest transaction. That is the way I look on it on its face." With this statement, we agree. The right of no third party is involved. This case is but an incident in a long continued war carried on between the stockholders of the Bergman Clay Manufacturing Company. There is no

reason why the one side should be put to disadvantage by resort to any method that is not fair and open.

The judgment of the lower court is affirmed.

CROW, C. J., PARKER, MORRIS, and GOSE, JJ., concur.