[No. 25016. Department One. July 27, 1934.]

WILLIAM E. NICHOLS, *Respondent*, v. NORMA DEBRITZ *et al., Defendants*, JEROME E. PAGE, *Appellant*.[1]

[1]Reported in 35 P. (2d) 29.

376

*Palmer, Askren & Brethorst* (*B. E. Lutterman*, of counsel), for appellant.

*Robert D. Hamlin*, for respondent.

MAIN, J.—The plaintiff, by this action, sought to foreclose a real estate mortgage. The defendant Jerome E. Page resisted the foreclosure, and by cross-complaint sought to have the "mortgage cancelled and his title to the property quieted." The trial was to the court without a jury, and resulted in a judgment to the effect that the mortgage gave a superior right to that claimed by Page, and from this judgment Page appeals.

The facts essential to be stated are these: The property in question is lots 16 and 17, in block 2, of Rengstorff Addition to the city of Seattle, and is improved with a dwelling house. This property was purchased by George DeBritz and E. E. Simpson, May 24, 1927, from King county, the property previously having been acquired by the county on a tax foreclosure. The title to the property was taken in the name of Norma DeBritz, a daughter of George DeBritz. The mortgage was dated May 24, 1927.

The respondent for many years had been well acquainted with Simpson, and on a number of occasions had purchased real estate mortgages through his office. Sometime in March, 1927, Simpson collected for the respondent, on what is referred to as the Barclay loan, the sum of six hundred dollars. This money remained

in the possession of Simpson until the latter part of May, 1927, at which time the respondent purchased from Simpson the mortgage in question, which was in the amount of six hundred dollars. The mortgage and the note secured thereby were left in the possession of Simpson, and respondent's name was filled in as mortgagee sometime between the date of its execution and prior to June 2nd. The respondent never saw the mortgage until a week or two after the transaction, and never looked at the property until long thereafter, relying, as he said, upon Simpson's furnishing him a good security for the loan.

For several months prior to May 24, 1927, the appellant had been in possession of the property, residing thereon. On that day, DeBritz called on him and notified him that the title was now in his daughter's name, and that he should thereafter pay the rents to him. June 1st, DeBritz again called upon the appellant, and it was then agreed that the appellant would purchase the property on a real estate contract for the sum of $1,250, of which $150 was to be paid in cash and the balance in monthly installments. In pursuance of this agreement, and on the same day, DeBritz prepared an earnest money receipt, which he signed, and the appellant paid thereon ten dollars.

The appellant thereupon took the earnest money receipt to his attorney, informing him that he intended to purchase the property and requesting an examination of the title. The attorney made an examination and a search of the records, and discovered that the title was in Norma DeBritz by virtue of a tax foreclosure deed from King county, which deed was in the possession of Simpson, and which the latter agreed to record, and that no other instruments had been placed of record affecting the title to the property in question up to noon of June 2, 1927. At noon on that

day, the appellant called on the attorney, and was informed that the title was in Norma DeBritz, and that nothing had been placed of record adverse to it.

The appellant then went to Simpson's office, and sometime prior to two o'clock on that day signed a contract to purchase the property in accordance with the terms specified in the earnest money receipt, and paid at that time $140, the balance of the down payment, and a copy of the contract was thereupon delivered to him. Nothing was said to the appellant at that time, or at any other time, about the mortgage held by the respondent, and he had no knowledge or notice thereof. Thereafter, and at 3:07 o'clock p. m. on the same day, June 2, 1927, Simpson filed for record in the auditor's office the treasurer's deed to Norma DeBritz, and the mortgage from her to the respondent.

In November, 1931, Simpson was convicted of embezzlement. It was then for the first time that the situation developed, the respondent claiming a prior right under his mortgage and the appellant claiming a superior right by reason of his contract of purchase and possession of the property. The appellant, prior to the time that Simpson's misdoing had become known, had paid regularly his monthly payments upon the contract, and there remained a balance due of approximately $240 at the time of the trial. He tendered the balance due and demanded a deed.

The question is, which of the parties, respondent or appellant, has the superior right. The respondent says that his mortgage gives him that right. The appellant says that he has the superior right by reason of the fact that, prior to the time the mortgage was filed for record, he had entered into a valid contract for the purchase of the property, and, as stated, was then, and for sometime prior thereto, in possession thereof.

Rem. Comp. Stat., § 10596, provided that all deeds, mortgages and assignments of mortgages shall be recorded in the office of the county auditor where the land is situated, and shall be valid as against *bona fide* purchasers "from the date of their filing for record in said office. . . ." That statute was in effect at the time the transaction with which we are here concerned took place, the repealing act, chapter 278, Laws of 1927, p. 670 (Rem. Rev. Stat., § 10596-1 *et seq.*), not having then become operative. Under that statute, the rights of a *bona fide* purchaser of real estate, if they attach prior to the filing for record of a deed or mortgage, are superior and will prevail.

In *Price v. Northern Bond & Mortgage Co.*, 161 Wash. 690, 297 Pac. 786, it was said:

"The language, '. . . shall be valid as against *bona fide* purchasers from the date of their filing . . .' very clearly indicates that, if the rights of *bona fide* purchasers attach before such filing, they must prevail."

In *Swanstrom v. Washington Trust Co.*, 41 Wash. 561, 83 Pac. 1112, it was held, in the case of two deeds from the same grantor, that the subsequent deed to a *bona fide* purchaser gave priority, notwithstanding the first deed had been recorded subsequent to the giving of the second deed and prior to the time that that deed was placed of record. It was there said:

"Bal. Code, § 4535, provides that 'all deeds, mortgages, and assignments of mortgages, shall be recorded in the office of the county auditor of the county where the land is situated, and shall be valid as against *bona fide* purchasers from the date of their filing for record in said office, and when so filed shall be notice to all the world.' It is not necessary that the subsequent conveyance should be first recorded in order to gain priority, unless the statute so provides. . . .

"Inasmuch as our statute does not require a prior registration of the subsequent deed in order to give it

priority, the court below correctly ruled that such prior registration is unnecessary.''

The cases of *Coolidge v. Schering,* 32 Wash. 557, 73 Pac. 682, and *Northern Bond & Mortgage Co. v. Cowell,* 172 Wash. 217, 20 P. (2d) 11, are to the same effect.

■ The appellant had such rights as against the respondent as he had acquired by virtue of his contract of purchase and possession. The contract, even though not acknowledged at the time it was signed and delivered, was valid and binding upon the parties to it. *First National Bank of Kennewick v. Conway,* 87 Wash. 506, 151 Pac. 1129; *Fallers v. Pring,* 144 Wash. 224, 257 Pac. 627.

■ The actual possession of the property by the appellant at the time the respondent's mortgage was filed for record was notice to him of whatever rights a prudent and reasonable inquiry would have revealed. The purchaser in such cases takes title subject to every right of the occupant that a reasonable inquiry would have disclosed. This rule applies as well to the nature of the tenure as to the quantity of land claimed by the party in possession.

In *Field v. Copping, Agnew & Scales,* 65 Wash. 359, 118 Pac. 329, 36 L. R. A. (N. S.) 488, it is said:

"The actual possession of the property by the appellants at the time the respondent acquired the title was notice to him of whatsoever rights a prudent and reasonable inquiry would have revealed. The actual possession of real property is notice to intending purchasers of the rights of those in possession, and the purchaser in such cases takes title subject to every right in the occupant that a reasonable inquiry would have disclosed. *Dennis v. Northern Pac. R. Co.,* 20 Wash. 320, 55 Pac. 210. This rule applies as well to the nature of the tenure as to the quantity of land claimed by the party in possession.''

The cases of *Bendon v. Parfit,* 74 Wash. 645, 134 Pac. 185; *Karlsten v. Hamel,* 123 Wash. 333, 212 Pac. 153, and others that might be cited, support the view stated.

If the respondent had made any reasonable inquiry at the time or before his mortgage was filed for record, he would have learned that the appellant was in possession of the property under a contract to purchase the same. The fact that the appellant had, prior to his contract of purchase, been in possession as a tenant does not relieve the respondent from the effect of what he would have learned had he made reasonable inquiry. *First National Bank of Paris v. Gray,* 168 Ark. 12, 268 S. W. 616.

The rule supported by the cases from this state above referred to charges the purchaser with facts which would have been disclosed by a reasonable inquiry, and the question is not whether the one in possession had, prior to the making of the purchase, been a tenant, but what would such inquiry have disclosed. The doctrine of notice by reason of possession is not confined to the protection of titles, but extends to all substantial rights.

In *Oliver v. McEachran,* 149 Wash. 433, 271 Pac. 93, it is said:

"But appellants, adopting language used by the minority in *Ashford v. Reese, supra* [132 Wash. 649, 233 Pac. 29], argue that respondents' possession and claim of right, being based upon no title, gave no notice of any title or right in them. It is true that, under the doctrine of the *Ashford* case, respondents had no title and therefore appellants could have received no notice of what did not, in fact, exist; but neither in the *Ashford* case or elsewhere has this court said that a purchaser in possession under an executory contract has no rights. Undoubtedly such purchaser does have a right of possession and a right to acquire title in accordance with the terms of the contract. Such rights,

though not amounting to title, are substantial rights such as one having notice and knowledge is bound to respect.''

■■ Something has been said with reference to purchase money mortgages being on a different basis than other mortgages. In this connection, it may be assumed that the six hundred dollars which went to King county to pay for the tax deed was the money of the respondent, which was then in the possession of Simpson. The statute above referred to makes no distinction between purchase money mortgages and any other mortgages, but provides that ''all deeds, mortgages, and assignments of mortgages'' shall be recorded in the office of the county auditor, and shall be valid as against ''bona fide purchasers from the date of their filing for record in said office.'' In this state, there is no such thing as a vendor's lien, which was a part of the common law of England, but did not become a part of the common law of this state because it was ''inapplicable to the legislation and existing conditions in this state.'' *Smith v. Allen,* 18 Wash. 1, 50 Pac. 783, 63 Am. St. 864, 39 L. R. A. 82; *Pacheco v. Mello,* 139 Wash. 566, 247 Pac. 927.

The appellant, having been in possession under a valid contract of purchase prior to the time that the respondent's mortgage was filed for record, has the superior right, and was entitled to have his rights to the property quieted and held superior to the rights claimed by the respondent under the mortgage.

The judgment will be reversed, and the cause remanded with direction to enter a judgment as herein indicated.

BEALS, C. J., MITCHELL, STEINERT, and MILLARD, JJ., concur.