[No. 8844–1–I.   Division One.   September 20, 1982.]

WASHINGTON CREDIT, INC., *Plaintiff*, v. JAMES HOUSTON,
ET AL, *Respondents*, SAFECO TITLE INSURANCE
COMPANY, *Appellant*.

WILLIAM MIEBACH, *Plaintiff*, v. SEDELL J. HOUSTON,
ET AL, *Defendants*, SAFECO TITLE INSURANCE
COMPANY, *Appellant*.

*Kristine A. Chrey,* for appellant.

*Siderius, Lonergan & Crowley* and *Patrick W. Crowley,*
for respondents.

CALLOW, J.—*Quaere:* Is a homestead extinguished when property is involuntarily conveyed at a sheriff's sale and a sheriff's deed is issued at the end of the 1–year redemption period?

The lender, Queen City Savings and Loan Association,

had received a sheriff's deed after the expiration of the year of redemption. The debtors *later* reacquired the property from Queen City by deed, but did not file a new homestead declaration. Several years later (1978), the property was sold at another sheriff's sale and another sheriff's deed was issued at the end of the redemption period (1979). This second sale was held pursuant to RCW 6.24.010–.220, the general execution sale statutes. The trial court set aside the second sale, holding that the property should have been sold pursuant to RCW 6.12.140–.280, the "excess value" statutes, because the debtors had a valid homestead. The "excess value" statutes allow a creditor to reach only the value of the property in excess of the $20,000 homestead exemption.

HISTORY OF THE PRESENT ACTION—
THE SECOND SHERIFF'S SALE

Mr. and Mrs. Houston became indebted to B & P Masonry in 1976 when they remodeled part of their home. B & P Masonry assigned its claim to Washington Credit, which obtained a default judgment in 1978. The property was sold to Washington Credit at a sheriff's sale held under the general execution sale statutes. Following the 1–year redemption period, a sheriff's deed was issued to Master Mortgages, Washington Credit's assignee. Master Mortgages then conveyed the property to William Miebach, who brought an unlawful detainer action against the Houstons. The trial court granted the Houstons' motion to set aside the sheriff's sale from which Miebach derived his title. Miebach conveyed his interest to Safeco Title Insurance Company, which brought the present appeal from the trial court's ruling.

HISTORY OF THE PRIOR ACTION—
THE FIRST SHERIFF'S SALE

The Houstons bought their home in 1954. In 1961, they filed a homestead declaration and the husband and the community declared bankruptcy. In 1965, the Houstons conveyed the property to Stephens and Boyd, who granted

a mortgage to Queen City Savings and Loan. The parties do not dispute that the Houstons' voluntary conveyance extinguished the homestead declared in 1961. In 1966, Stephens and Boyd conveyed the property back to the Houstons, who assumed Queen City's mortgage.

Queen City recovered a $7,500 judgment in 1969 after the Houstons had defaulted on the mortgage. The Houstons filed another homestead declaration *before* the property was sold to Queen City at a sheriff's sale. The Houstons never exercised their redemption rights, and Queen City received a sheriff's deed in January 1971.[1] In June 1971, Queen City conveyed the property back to the Houstons. The Houstons did not, however, file another homestead declaration. Safeco argues that the homestead declared in 1969 was extinguished when the sheriff's deed was issued to Queen City in 1971.

We must inquire whether the second sheriff's sale should have complied with the "excess value" statutes. The answer depends on whether the homestead was extinguished when the property was conveyed at the first sheriff's sale and a sheriff's deed issued thereafter.

The statutes and cases applicable to these events which occurred between 1954 and 1979 compel the legal conclusion that conveyance by the holder of the sheriff's deed *back* to the debtors did not revive the debtor's claim of homestead automatically.

*Security Sav. & Loan Ass'n v. Busch,* 84 Wn.2d 52, 523 P.2d 1188 (1974) held that a homestead is extinguished when the property is *voluntarily* conveyed and is not revived when the former owners reacquire the property. The court gave two reasons for its conclusion.

*First,*

there can be no homestead right unless there is an existing interest of some nature and none existed here. A

---

[1]If the Houstons had redeemed their property from Queen City within 1 year of the sheriff's sale, before the sheriff's deed was issued, the homestead declared in 1969 would have remained intact, as explained in 2 Washington State Bar Ass'n, *Real Property Deskbook* § 52.11 (1981).

quitclaim deed is deemed a good and sufficient conveyance of all *then existing* legal and equitable rights of the grantor in the described premises. . . . Since the [owners] conveyed all of their then existing legal and equitable rights in and to the . . . property, there was nothing left to which their homestead could continue to attach. Thus, it was extinguished.

*Busch,* at 56.

*Second,*

[a] conveyance of the property upon which a homestead previously has been declared is a "grant thereof." RCW 6.12.120 provides in part: "A homestead can be abandoned only by a declaration of abandonment, *or a grant thereof,* executed and acknowledged: (1) *By the husband and wife* if the claimant is married." (Italics ours.) California Civil Code § 1243 was, until 1949, identical to our statute, and California courts have held that the word "grant" as used in the statute applies to all transfers of real estate. *Faivre v. Daley,* 93 Cal. 664, 29 P. 256 (1892); *White v. Rosenthal,* 140 Cal. App. 184, 35 P.2d 154 (1934); *First Trust & Sav. Bank v. Warden,* 18 Cal. App. 2d 131, 63 P.2d 329 (1936); *Schuler–Knox Co. v. Smith,* 62 Cal. App. 2d 86, 144 P.2d 47 (1943). *See also* 40 C.J.S. *Homesteads* § 172 (1944).

*Busch,* at 56 n.3.

The Houstons argue, however, that a homestead is not extinguished if the conveyance is *involuntary.* This contention is refuted by two cases cited in the *Busch* footnote.

*First Trust & Sav. Bank v. Warden,* 18 Cal. App. 2d 131, 134, 63 P.2d 329 (1936) affirmed the trial court's finding that the homestead claimant had been "divested of any rights [under the homestead] superior to those of the plaintiff mortgagee, both *by the sheriff's deed* pursuant to sale under execution and the [later voluntary] conveyance . . ." (Italics ours.)

*White v. Rosenthal,* 140 Cal. App. 184, 35 P.2d 154 (1934) also held that an involuntary conveyance extinguishes a homestead. The homestead claimant argued that he had not "abandoned" the homestead within the meaning of the statute. Until 1949, as noted in *Busch,* the California

statute was identical to RCW 6.12.120, which provides that a homestead can only be abandoned by a "grant" thereof.

> The word "grant" as used in [the statute] is applicable to all transfers of real estate and this would include transfers by operation of law as well as the voluntary transfers of the owners of property. The sale under the decree of foreclosure of a mortgage is a judicial sale and is regarded in law as a sale by the judgment debtor. (*Thresher v. Atchison,* 117 Cal. 73 [48 Pac. 1020, 59 Am. St. Rep. 159]; 18 Cal. Jur. 547.)

*White,* at 186.[2] Because property sold at a sheriff's sale is transferred by operation of law, but is regarded as a sale by the judgment debtor, *Thresher v. Atchison,* 117 Cal. 73, 48 P. 1020 (1897), the signatures of the debtors also must be inserted by operation of law.

The first reason for the court's conclusion in *Busch* is equally applicable to involuntary transfers of property. When the property is conveyed to a third person, whether voluntarily or involuntarily, there is nothing left to which the homestead may attach. Legal title passes to the purchaser at an execution sale when the sheriff's deed is issued, *Gray v. C.A. Harris & Son, Inc.,* 200 Wash. 181, 186, 93 P.2d 385 (1939), and the homestead is extinguished. The *Busch* court's second reason—that a conveyance of property is a "grant" thereof within the meaning of the homestead abandonment statute—also applies to involuntary transfers under *Warden* and *White.*

Thus, when a sheriff's deed was issued to Queen City

---

[2]The court also held that the conveyance by sheriff's deed was not a "forced sale" within the meaning of the California constitutional provision protecting homesteads. Washington has a similar provision. *See* Const. art. 19, § 1.

> The phrase "forced sale" does not apply where the owner consents directly to the sale, or does so indirectly by consenting to, or doing those acts or things that necessarily or usually eventuate in a sale, as, for instance, a sale under a power contained in a mortgage or a decree of foreclosure. When the owner of property consents to a sale under the execution or other legal process, the sale is not forced, but it is as voluntary, within the full import of the term, as it is when he directly effects the sale and executes the conveyance. (*Peterson v. Hornblower,* 33 Cal. 266.)

*White v. Rosenthal,* 140 Cal. App. 184, 186–87, 35 P.2d 154 (1934).

Savings and Loan in 1971, giving it legal title, the Houstons' homestead was extinguished. The homestead was not revived when Queen City reconveyed the property. The second sheriff's sale, therefore, properly was held under the general execution sale statutes because no homestead existed.

The judgment is reversed.

SWANSON, J., concurs.

WILLIAMS, J. (dissenting)—I am unable to concur in the majority opinion, because, as I view it, that opinion relies upon a brief hiatus in the bare legal title to achieve an unrealistic, unnecessary and unjust result. The decision approves the procedure whereby the creditor, Washington Credit, Inc., for a $1,295.12 debt obtained the $80,000 home of the Houstons in which they had *lived continuously since 1954,* and upon which Mr. Houston, as head of the household, had properly filed a declaration of homestead.

The brief period in 1971 that the legal title was transferred to Queen City Savings and Loan Association is of no consequence, because the law in effect at that time did not require legal title or ownership to either successfully claim or maintain homestead status of property where a family resided. RCW 6.12.010 (amended by Laws of 1981, ch. 329, § 7, p. 1549). What was required was that they live on the property as their home and that a declaration of homestead be filed. Thus, *possession* was the key to their right to homestead.

Historically, possession is the single most important attribute of right to land. As stated in 2 F. Pollock & F. Maitland, *History of English Law* 29 (2d ed. 1911):

> In the history of our law there is no idea more cardinal than that of seisin. Even in the law of the present day it plays a part which must be studied by every lawyer; but in the past it was so important that we may almost say that the whole system of our land law was law about seisin and its consequences.
> Seisin is possession.

(Footnote omitted.) In the context of the common law, possession is good title of right against anyone who cannot show a better title. P. Fitzgerald, *Salmond on Jurisprudence* § 60 (12th ed. 1966). This is because "Possession of material things is essential to life; it is the most basic relationship between men and things." Fitzgerald, at § 51.

In Washington, this principle as it pertains to the homestead exemption was recognized in *Downey v. Wilber,* 117 Wash. 660, 661, 202 P. 256 (1921) wherein the court said:

> Its [the homestead exemption] purpose is not to give or confirm title in the claimant, but is to prevent a forced sale of the home; in other words, to secure the claimant and his family in the possession of his home.

Also, as was said in *Desmond v. Shotwell,* 142 Wash. 187, 188, 252 P. 692 (1927):

> [N]owhere in the statutes . . . is there any requirement that the person asserting the right must own either a legal or an equitable interest in the property claimed.

Although the latter quotation is characterized as dicta in *Security Sav. & Loan Ass'n v. Busch,* 84 Wn.2d 52, 523 P.2d 1188 (1974), and rightly so, these expressions exemplify the essence of family rights in land. Before 1895 in Washington, occupancy established the homestead. So it is in most states to this day. *See generally* G. Pindar, *American Real Estate Law* § 17–2 n.2 (1976). In 1981 the Washington State Legislature conformed our law to this practice. Laws of 1981, ch. 329, §§ 7, 9 and 10, p. 1549.

*Busch* is distinguishable. There, the homestead was held to have been extinguished because "subsequent to making the declaration of homestead [the family] voluntarily parted with *all interest* in the . . . property by means of a quitclaim deed." *Busch,* at 56.

Queen City Savings made no attempt to gain possession of the property by writ of assistance in aid of the decree of foreclosure, if in fact the decree provided for it, or by independent action as discussed in the *Busch* case. There probably was a right to possession, but there is no showing that the right was exercised. In the meantime, the property was

the Houstons' home, protected against all general creditors, including Washington Credit.

The result reached by the majority is an unconscionable windfall for Washington Credit. No contention is made that it or its successors were in any way misinformed or misled by the mortgage transactions and litigation between Queen City Savings and the Houstons. By no stretch of the imagination were they innocent bona fide purchasers for value. Quite the contrary, Washington Credit transferred the sheriff's certificate for no stated consideration to Master Mortgages, Inc. which conveyed the property to William Miebach by special warranty deed which excludes all warranties, statutory and otherwise, except that Master Mortgages, Inc. is the grantor.[3]

I would affirm.

Reconsideration denied March 28, 1983.

Review granted by Supreme Court July 15, 1983.

---

[3]The "warranty" part of the deed reads: "The Grantor for it and for its successors in interest does by these presents expressly limit the covenants of the deed to those herein expressed, and excludes all covenants arising or to arise by statutory or other implication, and does hereby covenant that against all persons whomsoever lawfully claiming or to claim by, through or under said Grantor and not otherwise, it will forever warrant and defend the said described real estate."