[No. 9229-4-I. Division One. October 6, 1983.]

WILLIAM MIEBACH, *Respondent,* v. DOMINIC COLASURDO, ET AL, *Appellants.*

VALERIA K. COLASURDO, ET AL, *Appellants,* v. WASHINGTON CREDIT, INC., ET AL, *Respondents.*

*Edmund J. Wood,* for appellants.

*Kristine A. Chrey* and *Mark A. Rossi,* for respondents Miebach.

*V. A. Retacco,* for respondent Washington Credit, Inc.

*C. M. McCune,* for respondent University Federal Savings and Loan Association.

SWANSON, J.—Valeria K. Colasurdo appeals the trial court's entry of a judgment quieting title to real property in William Miebach. We affirm.

On February 26, 1974, Valerie Shearer, the daughter of Valeria Colasurdo, executed an installment note in favor of Group Health Credit Union for $1,300 to purchase a Mercedes automobile. Valeria Colasurdo and her husband, Dominic Colasurdo,[1] signed the installment note as comakers. By the clear terms of the note each comaker was bound as a principal, waived any right to presentment, demand, protest, or notice of nonpayment, and also waived any objection to an assignment of the note for collection or a suit thereon. Shearer made only two payments to Group Health Credit and the Colasurdos none. Subsequently, Group Health Credit assigned the installment note to Washington Credit, Inc., a collection agency.

Washington Credit then instituted collection efforts against Shearer and received some payment from her. Further collection efforts, however, were unsuccessful and Washington Credit filed suit in Seattle District Court on June 23, 1977. Shearer was personally served with a notice of suit and complaint. The Colasurdos were served by substitute service upon their 15–year–old foster daughter, Samatra Phillips, who was then residing at the Colasurdo home. Neither Shearer nor the Colasurdos appeared or defended the district court action and, as a result, a default judgment was rendered against Shearer and the Colasurdos, jointly and severally, on August 3, 1977, in the amount of $1,150.24.

Following the filing of the judgment in the superior court, a praecipe for a writ of execution was issued to Gary

---

[1]Prior to trial, Dominic Colasurdo died. His interest in the property at issue in this appeal passed to Valeria Colasurdo pursuant to a valid community property agreement.

Culver as attorney for Washington Credit. Culver drove by the Colasurdo home but observed no personal property on the premises. He then advised the sheriff's office that he was unable to locate any personal property and requested the sheriff to levy upon and sell at execution sale the Colasurdo real estate consisting of their residence.

Pursuant to the praecipe for execution, an execution issued on June 8, 1978. In accordance with then existing statutory requirements, a notice of sheriff's sale was posted on the Colasurdo property, received by both Dominic and Valeria and which Valeria Colasurdo personally read. Additionally, the notice was published for 5 days in the Daily Journal of Commerce. Valeria Colasurdo merely contacted her daughter, Shearer, and told her to "take care of it." Shearer took no action and never reported back to her mother.

At the sheriff's sale, the Colasurdo residence was sold to Washington Credit, the only bidder, for $1,340.02 in full satisfaction of the default judgment. The trial court found that at the time of sale the fair market value of the home was $106,000 with approximately $77,000 as the Colasurdos' equity interest. The property was subject to a superior obligation to University Federal Savings & Loan Association by a deed of trust.

Relying on Culver's letter, the sheriff filed a return of sale on June 30, 1978, stating that he was unable to locate any personal property. An order confirming the sheriff's sale was then entered on September 21, 1978, there being no objections filed. Thereafter, Washington Credit assigned its interest obtained by the sheriff's certification of purchase to Master Mortgages, Inc., for $850. Master Mortgages was a real property holding company solely owned by Gary Culver.

After the 1–year redemption period had expired on July 21, 1979 without payment from the Colasurdos the property was conveyed by sheriff's deed to Master Mortgages. On September 6, 1979, Master Mortgages conveyed the property by special warranty deed to Arctic Trading Com-

pany, Inc.

On October 5, 1979, Arctic Trading Company, through Culver, conveyed the Colasurdo property to William Miebach for consideration of $80,000. Miebach had visited the Colasurdo residence before purchasing the property and knew Valeria Colasurdo still resided there even though Colasurdo was not at home at the time. Miebach testified that he saw a permit of some sort indicating some work was going on. He also had discussed sheriff's sales in general and particularly this property with Culver. Culver suggested that Miebach look at the court file. Miebach testified that he relied on his search of the title and the title insurance report in deciding to purchase the property.

Subsequent to purchase, Miebach instituted an unlawful detainer action against Valeria Colasurdo to remove her from her home. Colasurdo then brought a separate action to vacate the August 3, 1977 default judgment and to set aside the sheriff's sale. By stipulation the two actions were consolidated for a trial to the court. The trial court upheld the validity of the default judgment, the sheriff's sale, and all subsequent conveyances of the Colasurdo residence. Accordingly, the trial court entered a judgment quieting title in William Miebach. This appeal followed.

Colasurdo first contends that a number of the trial court's findings of fact are not supported by substantial evidence.

Our review of the record discloses that each and every finding of fact entered by the trial court finds substantial support in the record. The court's oral decision, moreover, shows that the court carefully considered all of the evidence before making its findings. They will not be disturbed on appeal.

Colasurdo's second contention is that the trial court erred by not vacating the default judgment. She presents two reasons for the contention. Initially, she claims service of process was invalid because it was not served upon an individual of suitable age and discretion. We conclude as did the trial court that the substituted service of process

upon Phillips, at that time Colasurdo's foster daughter, was valid.

Pursuant to JCR 4(e)(13), personal jurisdiction may be acquired by serving a copy of notice and complaint on the defendant personally *or* by leaving the notice and complaint "at the house of his usual abode with some person of suitable age and discretion then resident therein." A facially correct return of service, present in this case, is presumed valid and, after judgment is entered, the burden is on the person attacking the service, Colasurdo here, to show by clear and convincing evidence that the service was irregular. *Dubois v. Western States Inv. Corp.*, 180 Wash. 259, 263, 39 P.2d 372 (1934); *Allen v. Starr*, 104 Wash. 246, 247, 176 P. 2 (1918).

Based on the facts before it, the trial court did not err in concluding that the foster daughter was a person of suitable age and discretion for purposes of receiving service of process. The trial court found that at the time of service the foster daughter was 15 years and some months old, familiar with the court system, a leader of her peer group and concerned with her future. Further, there was testimony at trial indicating that the foster daughter could read and was of at least average intelligence. Courts in other jurisdictions have decided that persons of the same age as the foster daughter are of suitable age and discretion for the purpose of receiving service of process. *See Day v. United Sec. Corp.*, 272 A.2d 448, 449–50 (D.C. 1970); *Holmen v. Miller*, 296 Minn. 99, 206 N.W.2d 916, 919–20 (1973); Annot., 91 A.L.R.3d 827 (1979). The trial court properly concluded that the foster daughter was of suitable age and discretion.

Colasurdo also contends that pursuant to CR 60(b) the default judgment should have been vacated due to unavoidable casualty and misfortune, excusable neglect, and facts sufficient to justify relief from the operation of the judgment. A motion to vacate a judgment on the above stated grounds is addressed to the sound discretion of the trial court, and its decision will not be overturned on appeal absent an abuse of that discretion. *Griggs v. Aver-*

*beck Realty, Inc.,* 92 Wn.2d 576, 582, 599 P.2d 1289 (1979).[2] Such a motion generally must be made within 1 year of the judgment's entry. CR 60(b). In addition, to vacate a judgment based upon such a motion the moving party must present facts constituting a defense to the action. *Griggs,* at 583; CR 60(e)(1).

We do not believe the trial court abused its discretion by refusing to vacate the default judgment. One factor supporting the trial court's determination is that Colasurdo did not move to vacate the default judgment until more than 2 years after its entry.

Further, even if the court were to invoke its equitable powers and waive the 1–year limitation as Colasurdo suggests, Colasurdo still failed to present facts establishing a meritorious claim or defense. To be distinguished from the subsequent execution and sheriff's sale, the August 3, 1977 default judgment was entered for an unpaid installment note between Group Health Credit and Valeria Colasurdo as comaker. By the clear and uncontroverted terms of the installment note, Colasurdo waived any right to presentment, demand, and notice of default. Further, she was bound as a principal. The evidence at trial, moreover, shows that Colasurdo's daughter was in default at the time judgment was entered and that other less onerous collection efforts were unsuccessful. Aside from the question of the propriety of the substituted service, discussed above, Colasurdo did not present any evidence that would tend to relieve her of liability on the underlying installment note. Thus, the trial court did not abuse its discretion in denying the petition to vacate because Colasurdo did not establish, as she must, a meritorious claim or defense.

Colasurdo next argues that the statutory notice requirements of RCW 6.24.010(2), as it then existed, relating to posting and publishing notice of a sheriff's sale were consti-

---

[2]The court found as a fact, "Insufficient evidence was introduced to establish that there was unavoidable casualty or misfortune to vacate the judgment." Finding of fact 53.

tutionally inadequate depriving her of due process of law. We disagree.

█ The United States Supreme Court recently discussed precisely this issue in a similar context.

The sufficiency of notice must be tested with reference to its ability to inform people of the pendency of proceedings that affect their interests. In arriving at the constitutional assessment, we look to the realities of the case before us: In determining the constitutionality of a procedure established by the State to provide notice in a particular class of cases, "its effect must be judged in the light of its practical application to the affairs of men as they are ordinarily conducted."

It is, of course, reasonable to assume that a property owner will maintain superintendence of his property, and to presume that actions physically disturbing his holdings will come to his attention. The frequent restatement of this rule impresses upon the property owner the fact that a failure to maintain watch over his property may have significant legal consequences for him, providing a spur to his attentiveness, and a consequent reinforcement to the empirical foundation of the principle. Upon this understanding, a State may in turn conclude that in most cases, the secure posting of a notice on the property of a person is likely to offer that property owner sufficient warning of the pendency of proceedings possibly affecting his interests.

The empirical basis of the presumption that notice posted upon property is adequate to alert the owner or occupant of property of the pendency of legal proceedings would appear to make the presumption particularly well founded where notice is posted at a residence. With respect to claims affecting the continued possession of that residence, the application of this presumption seems particularly apt: If the tenant has a continuing interest in maintaining possession of the property for his use and occupancy, he might reasonably be expected to frequent the premises; if he no longer occupies the premises, then the injury that might result from his not having received actual notice as a consequence of the posted notice is reduced. Short of providing personal service, then, posting notice on the door of a person's home would, in many or perhaps most instances, constitute not only a consti-

tutionally acceptable means of service, but indeed a singularly appropriate and effective way of ensuring that a person who cannot conveniently be served personally is actually apprised of proceedings against him.

(Footnotes and citations omitted.) *Greene v. Lindsey,* 456 U.S. 444, 451–53, 72 L. Ed. 2d 249, 102 S. Ct. 1874, 1879 (1982).[3]

In the instant case, the posting of the notice on Colasurdo's door satisfied not only the statutory but the constitutional requirements. In fact, it is undisputed that in this case Colasurdo read the notice and therefore had actual notice. Her constitutional rights were not violated.

█ Colasurdo next contends due process requires that notice of one's statutory right to redeem must be given to the owner of the real property sold at a sheriff's sale. Because she did not receive such notice, she argues the sale should be vacated on constitutional grounds. Colasurdo, however, did not assert this objection at trial. It is fundamental that "[c]ounsel cannot remain silent as to claimed error during trial and later urge objections for the first time on appeal." *Graves v. Elliott,* 69 Wn.2d 652, 656, 419 P.2d 1008 (1966). Even a constitutional issue may not be considered for the first time on appeal if it does not relate to the jurisdiction of the court or the rights of a criminal defendant. *Kennedy v. Seattle,* 94 Wn.2d 376, 383, 617 P.2d 713 (1980). Here, Colasurdo's due process challenge does not relate to the court's jurisdiction and the rights of a criminal defendant are not involved. Therefore, Colasurdo is prevented from raising the issue for the first time on appeal.

Colasurdo also urges this court to retroactively apply RCW 6.24.145,[4] which provides stricter notice requirements

---

[3]The Court concluded that posting in a public housing apartment complex, where notices posted on apartment doors were commonly removed by children and where the tenants did not receive actual notice, was unconstitutional.

[4]RCW 6.24.145, adopted in 1981, provides in part:

"Every two months during the redemption period provided by RCW 6.24.140, the purchaser or his assignee shall send by certified mail, return receipt requested, and by first class mail to the judgment debtor or his successor in interest a notice

during the redemption period after a sheriff's sale.

In determining whether to apply a statute prospectively or retroactively the court must ascertain the legislative intent. *Lau v. Nelson*, 92 Wn.2d 823, 826, 601 P.2d 527 (1979). Statutes are generally presumed to apply prospectively only. *Macumber v. Shafer*, 96 Wn.2d 568, 570, 637 P.2d 645 (1981). If a statute is remedial, however, the presumption is in favor of retroactivity, *Macumber*, at 570, unless it affects a vested right, *Johnston v. Beneficial Management Corp. of Am.*, 85 Wn.2d 637, 641, 538 P.2d 510 (1975), or existing right, *Gillis v. King Cy.*, 42 Wn.2d 373, 378, 255 P.2d 546 (1953). Further, a statute written in present and future tenses manifests a legislative intent that it apply prospectively only. *Johnston*, at 641–42.

We conclude that RCW 6.24.145 is prospective only. Although RCW 6.24.145 is remedial, because it affects existing rights, it is presumed to apply prospectively. Also, because it is written in the present and future tenses, it follows it applies prospectively.

Colasurdo's last and primary argument on appeal is that the trial court erred by not setting aside the sheriff's sale. She argues that the sale should be set aside because of irregular circumstances surrounding the sale, for example, an inadequate search for personal property.

Pursuant to RCW 6.24.100, as it then existed, a court order confirming a sheriff's sale cures all irregularities attending such sale aside from jurisdictional defects. Thus, objections relating to inadequate price, inadequate search for personal property or other irregular circumstances must be made prior to confirmation. *Atwood v. McGrath*, 137 Wash. 400, 406–07, 242 P. 648 (1926); *Malo v. Anderson*, 62 Wn.2d 813, 815, 384 P.2d 867 (1963); *Casa del Rey v. Hart*, 31 Wn. App. 532, 537–38, 643 P.2d 900 (1982). Here the

---

advising the judgment debtor that the redemption period is expiring, how many months have expired, and how many months remain. The notice shall also state the amount for which the property may be redeemed and shall advise the judgment debtor that if the property is not redeemed he will face eviction at the end of the redemption period."

order of confirmation was entered on September 21, 1978, but Colasurdo did not move to set aside the sheriff's sale or object to the entry of the order of confirmation until January 31, 1980 even though she had actual and constructive notice of the sheriff's sale. Thus, Colasurdo has waived her right to object.

 Colasurdo, however, asks this court to invoke its equity powers and set aside the sheriff's sale notwithstanding the order of confirmation. Although generally a court order confirming a sheriff's sale cures all irregularities attending such sale aside from jurisdictional defects,

> when there are no intervening rights, such as a bona fide purchaser, to consider, and the original parties to a transaction have invoked the aid of a court of equity, the relief afforded will not necessarily follow technicalities, but will meet the ends of justice.

*Malo v. Anderson,* at 815.

In determining whether the sheriff's sale may be set aside, then, a preliminary question is whether Miebach was a bona fide purchaser.

We initially observe that, despite the trial court's designation as a finding of fact that Miebach was a bona fide purchaser, a determination of whether one is a bona fide purchaser involves a mixed question of law and fact.[5] While the Washington Supreme Court has indicated that a determination of whether a party is a bona fide purchaser is a question of fact, *Hudesman v. Foley,* 73 Wn.2d 880, 889–90, 441 P.2d 532 (1968), more recent decisions by that court convince us that the determination involves a mixed question of law and fact. In *Leschi Imp. Coun. v. State Hwy. Comm'n,* 84 Wn.2d 271, 283, 525 P.2d 774 (1974), the court stated:

---

[5]The trial court found as finding of fact 52 stated:

"Defendants failed to introduce evidence sufficient to establish that William Miebach was not a bona fide purchaser for value without notice."

As conclusion of law 26 the court stated:

"William Miebach is a bona fide purchaser for value without notice of any claims of Colasurdo."

An additional approach to the question–of–fact/question–of–law issue may be characterized as the analytical approach. In *NLRB v. Marcus Trucking Co.* [286 F.2d 583, 590 (2d Cir. 1961)], Judge Friendly quoted Professor Jaffe's definition of a finding of fact: "'A finding of fact is the assertion that a phenomenon has happened or is or will be happening independent of or anterior to any assertion as to its legal effect.'"

This view has long been a part of the common law of this state.

More recently, the State Supreme Court indicated that if a term carries legal implications, a determination of whether it has been established in a case is a conclusion of law. *See Woodruff v. McClellan,* 95 Wn.2d 394, 396, 622 P.2d 1268 (1980).

Applying these principles to the case at hand, we hold that a determination of whether one is a bona fide purchaser involves both a question of fact and a conclusion of law. The term bona fide purchaser clearly carries legal implications. Furthermore, it is not an assertion that something has happened independent of any assertion as to its legal effects. Thus, under the applicable tests, the question of whether one is a bona fide purchaser involves the usual application of the law to the proven facts.[6] Here the trial court found as a fact that the defendant did not sustain her burden of proof that Miebach was not a bona fide purchaser for value and so concluded as a matter of law that he was a bona fide purchaser for value.

Our Supreme Court in *Glaser v. Holdorf,* 56 Wn.2d 204, 352 P.2d 212 (1960) defined bona fide purchaser. The court stated:

A bona fide purchaser for value is one who without notice of another's claim of right to, or equity in, the property prior to his acquisition of title, has paid the vendor a valuable consideration.

*Glaser,* at 209. "The burden of establishing that a pur-

---

[6]At least one other court has concluded that the issue involves a mixed question of law and fact. *See Island Pond Nat'l Bank v. Lacroix,* 104 Vt. 282, 158 A. 684 (1932).

chaser had prior notice of another's claim, right, or equity, rests upon the one who asserts such prior notice." *Glaser,* at 209. There is no necessity of establishing actual notice, however. The purchaser need only have "such information as would excite apprehension in an ordinary mind and prompt a person of average prudence to make inquiry". *Glaser,* at 209. Ordinarily, a purchaser may rely upon record title when purchasing property. *E.g., Hendricks v. Lake,* 12 Wn. App. 15, 21, 528 P.2d 491 (1974). Our Supreme Court in *Biles–Coleman Lumber Co. v. Lesamiz,* 49 Wn.2d 436, 439, 302 P.2d 198 (1956) stated the rule as follows: "a bona fide purchaser for value of real property may rely upon the record chain of title as shown in the office of the county auditor." (Citations omitted.) But, Colasurdo argues, the circumstances here should have caused Miebach to inquire further to determine if she had a claim to the property. In particular, Colasurdo argues her possession of the property and Miebach's awareness of that possession constituted such information as would induce a reasonable man to make inquiry.

We do agree that actual possession of the premises by a third person generally gives notice of whatever rights a reasonable inquiry would have revealed. *See Nichols v. DeBritz,* 178 Wash. 375, 380, 35 P.2d 29 (1934); *Bendon v. Parfit,* 74 Wash. 645, 648, 134 P. 185 (1913). But we also observe the reason for the rule that possession constitutes notice is that it generally creates an apprehension in a reasonable mind that the possessor has a claim to the property, requiring further inquiry. In circumstances where the reason for the rule does not apply, therefore, exceptions have been fashioned. Thus, an original grantor "who has parted with title of record but remains in possession cannot rely on notice being given by such possession of any continuing claim." 8 G. Thompson, *Real Property* §§ 4331, 4335 (1963 repl.); *accord, Crawford v. Timm,* 85 Wash. 568, 570, 148 P. 886 (1915); *Murry v. Carlton,* 65 Wash. 364, 367–68, 118 P. 332 (1911). The reason for this exception is that a subsequent purchaser is entitled to presume the

possessor is merely holding over until convenient for him to leave. Thompson, at § 4335. The situation does not trigger such apprehension in a reasonable mind as to require further inquiry.

Consistent with these principles we conclude that where the person in possession lost all legal claim to the premises through a sheriff's sale and confirmation, subsequent purchasers from the purchaser at the sheriff's sale are not required to inquire of the possessor merely because of that possession. Such a situation does not create apprehension to a reasonable man; a subsequent purchaser can presume that the previous owner is merely holding over. Thus, there is no further need to inquire.

Applying this rule to the present case, we conclude that Miebach was not required to confront Colasurdo and conduct an interrogation as suggested by the dissent. Miebach examined the record and knew that Colasurdo had lost her property through a sheriff's sale and that she had failed to exercise redemption rights. Her possession at the time Miebach purchased the property was understandable. In fact, Miebach was assured by his grantor that Colasurdo was a holdover and a legal action would be necessary to obtain possession. Further, it must be remembered that Miebach had searched the record title which also showed a confirmed judicial sale and a sheriff's deed, valid on its face. Under these circumstances, Colasurdo's possession was not such information as would excite apprehension in an ordinary mind that she would assert a claim to the premises and seek equitable relief and thereby prompt further inquiry. Thus, on the record before us we conclude Miebach had no notice of Colasurdo's equitable claim. In addition, as noted previously, the trial court specifically found as a fact that Colasurdo "failed to introduce evidence sufficient to establish that William Miebach was not a bona fide purchaser for value without notice." Finding of fact 52. Accordingly, he is insulated from Colasurdo's claims against the previous purchasers.

Further, the absence of notice of right or claim require-

ment in the bona fide purchaser test presupposes that an actual right exists. In this case Colasurdo's record rights were extinguished after expiration of the redemption period and she does not claim any nonrecord rights.

A brief examination of the equities here supports our determination that Miebach is a bona fide purchaser insulated from Colasurdo's claims. "[W]here one of two innocent parties must suffer, the one who was the cause of the misfortune must bear the burden . . ." *Murry v. Carlton,* 65 Wash. at 367. Colasurdo, in a practical sense, caused the loss here. She received both actual and constructive notice of the sheriff's sale, but was negligent, ignoring the notice. Had she acted upon the notice, Miebach would not be in a position to suffer a substantial loss. However unfortunate it is for Colasurdo to suffer the loss, based on grounds of relative innocence, it is fairer than shifting the loss to an innocent purchaser.

While, because we have decided Miebach was a bona fide purchaser, it is unnecessary to address further the issue of whether the sale should be set aside on equitable grounds, we feel obliged to note our repugnance of the practices used by Culver even though technically within the law.[7] We agree with the trial judge's observation in his oral decision, "The Court does not look with warmth or indeed with much respect on those who prowl for the troubles of others to make profit from distressed properties and the failure of property owners to properly protect themselves."[8]

---

[7]The trial court did not find fraud. It concluded that "Valeria Colasurdo failed to prove fraud in the events leading up to the sale, the sale, or after the sale, . . ." Conclusion of law 25.

[8]In response to the dissent, we wish to emphasize the primary basis of our determination on the equity issue. We recognize that equity may overturn a judicial sale. But, where the rights of a bona fide purchaser intervene, the well founded rule is that equity will not overturn such a sale. Based on the record before the trial court, we are convinced that Miebach was a bona fide purchaser. Contrary to the implication of the dissent, we do not approve the practices of Culver. Had we only considered the equities between the original parties, we may have reached a different result.

On the record made below, we affirm the judgment quieting title in Miebach.

CALLOW, J., concurs.

WILLIAMS, J. (dissenting)—I am unable to concur in the majority opinion in this suit in equity, because, as I view it, Mr. Miebach's title stands no stronger than its antecedents which collapse under judicial scrutiny. The decision approves a procedure whereby Valeria Colasurdo, an elderly widow, has her $106,000 home taken from her to satisfy a $1,150.24 debt in violation of the law and simple justice.

The majority opinion is premised upon the conclusion that the order confirming sale absolutely cleared title to the property in William Miebach. I disagree. Where no bona fide purchaser is involved, an order confirming sale may "provide neither sword nor shield to a party in equity." *Malo v. Anderson,* 62 Wn.2d 813, 815, 384 P.2d 867 (1963). Miebach claims the order as a shield, contending that he is a bona fide purchaser. He is not.

> A bona fide purchaser for value is one who without notice of another's claim of right to, or equity in, the property prior to his acquisition of title, has paid the vendor a valuable consideration.

*Glaser v. Holdorf,* 56 Wn.2d 204, 209, 352 P.2d 212 (1960).

Because possession of property gives notice to all persons dealing with it of whatever rights the possessor claims, a purchaser takes title subject to every right of the occupant that a reasonable inquiry of the occupant would have disclosed. *Glaser v. Holdorf, supra* at 210; *Nichols v. DeBritz,* 178 Wash. 375, 380, 35 P.2d 29 (1934). Put another way, one is not a bona fide purchaser for value if he did not make an inquiry which a reasonable person in his position would have made. *Glaser v. Holdorf, supra* at 209.

When Miebach purchased the virtually unwarranted[9]

---

[9]The property was conveyed to Miebach by a special warranty deed which excludes all warranties, statutory and otherwise, except that Arctic Trading is the

title to the property he knew that Mr. and Mrs. Colasurdo were living in the house, were making improvements thereon, and would not surrender possession without a legal battle where all of their rights, legal and equitable, would be asserted. Rather than ask the Colasurdos about their rights to the property—an inquiry any *reasonable* person would have made—Miebach, an experienced businessman, examined the official records, learning that Washington Credit—Master Mortgages—Arctic Trading bought the property for less than 2 percent of its fair market value. As a matter of law, therefore, Miebach had full and adequate notice of the Colasurdos' claim of right to, or equity in, the property before he acquired title. He was not a bona fide purchaser.

Because Miebach was not a bona fide purchaser, equity, having jurisdiction for all purposes, *Malo v. Anderson, supra,* requires this court to examine all aspects of the transaction for unfairness or fraud.

> It is well settled that equity will intervene and set aside an execution sale or cancel a sheriff's deed, after the redemption period has expired, where it appears the consideration was grossly inadequate and the sale was attended by unfairness and fraud.

*Pender v. Dowse,* 1 Utah 2d 283, 288, 265 P.2d 644, 647 (1954).

> [I]f, in addition to gross inadequacy [of price], the purchaser has been guilty of any unfairness, or has taken any undue advantage, or if the owner of the property . . . has been for any other reason, misled or surprised, then the sale will be regarded as fraudulent and void . . . *Great inadequacy requires only slight circumstances of unfairness* in the conduct of the party benefited by the sale to raise the presumption of fraud.

(Italics mine.) *Graffam v. Burgess,* 117 U.S. 180, 192, 29 L. Ed. 839, 6 S. Ct. 686 (1886). *Accord, Mellen v. Edwards,* 179 Wash. 272, 37 P.2d 203 (1934); *Triplett v. Bergman,* 82 Wash. 639, 144 P. 899 (1914); *Majer v. Fosseen,* 15 Wn. App. 687, 551 P.2d 757 (1976), *review denied,* 88 Wn.2d 1001 (1977).

The first question, then, is: was the price paid for the Colasurdo home adequate? The home, valued in excess of $106,000 and subject to a $29,000 deed of trust was purchased for a paltry $1,346.02—less than 2 percent of its fair market value, a grossly inadequate price. *Triplett v. Bergman, supra.*

The next question: was the sale attended by unfairness or fraud, however slight? "Yes."

The law in effect at the time the Colasurdo home was sold provided:

> If the execution be against the property of the judgment debtor it shall require the officer to satisfy the judgment, with interest, out of the *personal property* of the debtor, and if sufficient personal property *cannot be found,* out of his real property upon which the judgment is a lien.

(Italics mine.) RCW 6.04.040(1) (1929).

The only search conducted to determine whether the Colasurdos owned enough personal property to satisfy the debt was conducted by Gary Culver,[10] a former member of the bar of this state,[11] who casually drove by the Colasurdo home one evening. At trial, Culver admitted the superficiality of this search, stating: "I don't recall whether I just drove by or whether I stopped, or whether I got out of the car." What is clear is that Culver made no "attempt to ascertain what [was] inside of [the] house," and made no attempt to contact the Colasurdos. Nor did Culver ask Washington Credit, which had access to such information, about the Colasurdos' personal property. But knowing, as he testified, that the sheriff would accept his representation

---

[10]This is not the first occasion we have had to render a decision involving Mr. Culver, Mr. Miebach, Washington Credit, Master Mortgages, and a questionable sheriff's sale. *See, e.g., Washington Credit, Inc. v. Houston,* 33 Wn. App. 41, 650 P.2d 1147 (1982), *review granted,* 100 Wn.2d 1004 (1983).

[11]By an order dated May 9, 1983, the Supreme Court disbarred Culver.

without question, Culver told the sheriff, in writing, that he was "unable to locate any personal property" belonging to the Colasurdos.[12] Hence, no true search for the Colasurdos' personal property was ever made.

At the time of the sheriff's sale, the Colasurdos had ample personal property to cover the debt, including: (1) $2,500 in a savings account at Fidelity Mutual Savings Bank, (2) $2,000 in a savings account at City Credit Union, (3) a 1974 Toyota Corolla SR–5 automobile, (4) a 1973 Mazda pickup truck, and (5) a 1965 Ford van. Because the Colasurdos were denied the protection of the statute requiring execution first upon personal property, rather than real property, to satisfy the debt, the proceeding was unfair.

In deciding this case, we are to be guided by the principles of common decency incorporated into our law.

> The law requires and will hold men to a just standard of right when they come seeking the aid of the courts. They must pursue an open and straightforward course. When judicial sales are made under circumstances inviting the interposition of the chancellor, a duty is put upon the court to "watch with suspicion and to censure with firmness the least departure from fairness in conducting them." *Collier v. Whipple,* 13 Wend. (N. Y.) 224.

*Triplett v. Bergman, supra* at 642.

Miebach was not a bona fide purchaser, a grossly inadequate price was paid for the Colasurdo home, and the execution sale was tainted by unfairness because no true effort

---

[12]At trial, Robert Lindquist, the Administrator of the Civil Division of the King County Police (sheriff), testified:

[T]he procedure was to accept the written communication from the attorney, which would assert that a search had been made for personal property, or make the assertion in very clear terms that there was no personal property to be found. And we considered that that was equivalent to an inquiry.

Lindquist further testified that no search for personal property was made by anyone other than Culver and that no one contacted the Colasurdos to inquire about their personal property.

was made to satisfy the debt from the Colasurdos' personal property. Equity requires that this sale be set aside. Common sense, common decency, and the common law compel me to believe that this judgment should be reversed.

Review granted by Supreme Court January 6, 1984.